[927 NE2d 1050, 901 NYS2d 566]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LYNETTE CABAN, Respondent.

Argued February 16, 2010; decided April 1, 2010

## POINTS OF COUNSEL

*Cyrus R. Vance, Jr., District Attorney,* New York City (*Marc Krupnick* and *Mark Dwyer* of counsel), for appellant. I. The Appellate Division's order is appealable and should be reversed. Limited testimony that defendant operated her vehicle with a suspended driver's license when she struck and killed an 81-year-old pedestrian was properly admitted at her criminally negligent homicide trial. (*People v Molineux,* 168 NY 264; *People v Albro,* 52 NY2d 619; *People v Giles,* 73 NY2d 666; *People v Alvino,* 71 NY2d 233; *People v Resek,* 3 NY3d 385; *People v Laws,* 86 NY2d 769; *People v Fehr,* 75 NY2d 836; *People v Cona,* 49 NY2d 26; *People v Rojas,* 97 NY2d 32; *People v Hudy,* 73 NY2d 40.) II. As defendant has failed to establish that the trial judge did not provide her with notice of the contents of four jury notes as well as an opportunity to suggest responses to those notes, defendant's claim that the judge failed to satisfy his core responsibilities is meritless and also partially unpreserved. (*People v O'Rama,* 78 NY2d 270; *People v Kisoon,* 8 NY3d 129; *People v Martin,* 8 NY3d 129; *People v Lykes,* 81 NY2d 767; *People v DeRosario,* 81 NY2d 801; *People v Starling,* 85 NY2d 509; *People v Kinchen,* 60 NY2d 772; *People v Cook,* 85 NY2d 928; *People v Andrew,* 1 NY3d 546; *People v Velasquez,* 1 NY3d 44.)

*Legal Aid Society, Criminal Appeals Bureau,* New York City (*Frances A. Gallagher* and *Steven Banks* of counsel), for respondent. I. This appeal must be dismissed because the intermediate appellate court's determination of reversal was based not on the law, but rather on its interest of justice review of an unpreserved issue, and, as such, it is outside the scope of this Court's review. (*People v Cona,* 49 NY2d 26; *People v Laws,* 86 NY2d 769; *People v Baumann & Sons Buses, Inc.,* 6 NY3d 404; *People v Dercole,* 52 NY2d 956; *People v Chessman,* 54 NY2d 1016; *People v Molineux,* 168 NY 264; *People v Fehr,* 75 NY2d 836; *People v Darrisaw,* 49 NY2d 786; *People v Maschi,* 65 AD2d 405, 49 NY2d 784; *People v Fava,* 86 AD2d 975, 58 NY2d 807.) II. The Appellate Division correctly determined that Ms. Caban was deprived of a fair trial by the admission of testimony that her license was suspended because that evidence was neither probative of her state of mind nor necessary to explain the incident. (*People v Cabrera,* 10 NY3d 370; *People v Boutin,* 75 NY2d 692; *Dalal v City of New York,* 262 AD2d 596; *St. Andrew v O'Brien,* 45 AD3d 1024; *White v Molinari,* 160 AD2d 302; *Hanley v Albano,* 20 AD2d 644; *Almonte v Marsha Operating*

*Corp.,* 265 AD2d 357; *Phass v MacClenathen,* 274 App Div 535; *People v Young,* 13 AD3d 716; *People v Reyes,* 75 NY2d 590.) III. The record failed to establish that the court provided counsel with notice of the contents of the substantive jury notes by reading the notes into the record outside of the presence of the jury before the court replied to the jury; counsel was thereby deprived of the opportunity to suggest appropriate responses, thereby depriving respondent of her right to the assistance of counsel and her due process right to a fair trial. (*People v Kisoon,* 8 NY3d 129; *People v O'Rama,* 78 NY2d 270; *People v Martin,* 8 NY3d 129; *People v Starling,* 85 NY2d 509; *People v DeRosario,* 81 NY2d 801; *People v Tabb,* 13 NY3d 852.)

### OPINION OF THE COURT

SMITH, J.

Defendant, while backing her car, hit and killed a pedestrian. At the time of that event, defendant's license to drive had been suspended, because of an earlier incident with some noticeable similarities to the later, fatal one. Defendant was convicted of criminally negligent homicide, after a trial in which the trial court admitted into evidence the fact of her license suspension. We hold that this evidence was properly admitted.

I

On January 2, 2003, defendant, driving on Third Avenue in Manhattan, stopped her car and backed it up to let her passengers out at a pizza shop. She backed too quickly, and failed to see an elderly woman, Francesca Maytin, who was crossing the avenue at or near a crosswalk. The car hit Maytin, who died later that day.

This was not the first time defendant had backed a car carelessly. Three months earlier, on October 3, 2002, her car was illegally parked at a bus stop, and a police officer began to write a ticket. Arriving at her car, defendant sought to escape the parking ticket by jumping into the car and backing away quickly—going, according to the People's description, into a busy intersection in the vicinity of a school at 8:30 in the morning. Her escape was thwarted when a bus blocked her path, and she received four summonses, including one for unsafe backing and one for failing to yield to pedestrians in a crosswalk. Her license to drive was suspended as a result.

Before defendant's trial, the People sought permission to put into evidence the details of the October 3 incident. Supreme

Court rejected that request, but the People were allowed to, and did, show that defendant's license had been suspended and that it remained so on the day of the fatal event. Defendant, convicted of criminally negligent homicide, appealed to the Appellate Division, which reversed, holding that evidence of the license suspension should not have been admitted (*People v Caban*, 51 AD3d 455 [1st Dept 2008]). A Judge of this Court granted the People leave to appeal (11 NY3d 896 [2009]), and we now reverse the Appellate Division's order.

## II

We must first decide whether the alleged error in admitting the license suspension was preserved for appellate review. Taking the opposite position from the one she took in the Appellate Division, defendant now argues that it was not. The reason for the change is that, under our precedents, an Appellate Division reversal that is based on an unpreserved error is considered an exercise of the Appellate Division's interest of justice power, not reviewable in our Court (*People v Baumann & Sons Buses, Inc.*, 6 NY3d 404, 406-407 [2006]; *People v Fava*, 58 NY2d 807 [1983]). Thus, if defendant failed to preserve the alleged error, she would benefit from her mistake, for we would be required to dismiss the People's appeal.

We conclude that the alleged error was preserved, though the relevant record is a bit complicated. The People moved before trial for the admission of evidence about the October 3, 2002 incident, and the trial court denied the motion insofar as it related to the People's case-in-chief. The parties interpreted this ruling differently: The prosecutor thought she was not barred from introducing, on her case-in-chief, proof that defendant's license was suspended, while defense counsel thought that the court's ruling excluded that evidence also. The conversation in which the parties disagreed was off the record, but was recited to the court on the record by the prosecutor, who asked the court for clarification; the court resolved the ambiguity in the People's favor. It is true that the defense lawyers never said on the record "we object to this evidence," but they did not have to, because their objection was clear from the prosecutor's summary of their position.

Because the trial judge was made aware, before he ruled on the issue, that the defense wanted him to rule otherwise, preservation was adequate. The Appellate Division's reversal was therefore based on a question of law that we may review.

## III

■ Defendant's argument, which the Appellate Division accepted, is that her license suspension was irrelevant to her guilt or innocence. In defendant's view, the license suspension sheds no light on whether she was criminally negligent in causing Maytin's death, but only served to prejudice the jury against her as someone who violated the law by driving illegally. We reject this argument, and conclude that the license suspension was relevant to the issue of criminal negligence.

Criminal negligence is defined by Penal Law § 15.05 (4):

> "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Thus the jury in this case had to consider not only whether defendant failed to perceive "a substantial and unjustifiable risk" that her careless driving would kill someone, but also whether that failure was "a gross deviation from the standard of care that a reasonable person would observe in the situation." In other words, the jury not only had to decide whether defendant was at fault, but also had to consider how much she was at fault. The license suspension was relevant to this question, because a jury could find that it proved defendant to be more negligent than the other evidence showed her to be.

A jury could find that it is unreasonable to back up quickly into a crosswalk, without checking carefully to be sure that no one is in the way; but that it is even more unreasonable to do so when the State has forbidden the driver from driving at all. A jury could find that the license suspension should, if it did not keep defendant off the road, at least have prompted her to pay more attention to safety while she was driving, and that in failing to do so she deviated grossly from what a reasonable person would have done.

While a license suspension is, as a general proposition, relevant to the issue of criminal negligence, that does not mean evidence of a suspension is admissible whenever criminal negligence is in issue. Evidence, though relevant, may be excluded

where "its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury" (*People v Scarola*, 71 NY2d 769, 777 [1988]). That danger is not present here. Defendant would have a better argument for exclusion if her license had been suspended, for example, for failure to pay parking tickets. But it was not. It was suspended for conduct frighteningly similar to the conduct that caused Francesca Maytin's death—backing unsafely into a crosswalk. If the jury inferred from the license suspension that defendant should have known that it was unsafe for her to drive, the jury was not misled.

■ The admission of the license suspension, to the extent it informed the jury about defendant's earlier misbehavior, did not violate the familiar rule that a defendant's uncharged crimes or bad acts are generally inadmissible when they serve only to show the defendant's criminal propensity (*People v Molineux*, 168 NY 264 [1901]). When the issue is criminal negligence, a prior similar act for which defendant has been punished shows more than propensity; a defendant who is repeatedly negligent in the same way may be found to be unable or unwilling to learn from her mistakes—and thus to be guilty not just of deviation, but of "gross deviation," from reasonable care. The prior conduct is thus directly relevant to the extent of defendant's negligence in the case on trial—to her mens rea.

The trial court did not err by allowing the fact of defendant's license suspension into evidence.

## IV

■ As an alternative ground for affirming the Appellate Division's order, defendant argues that the trial court violated the rule of *People v O'Rama* (78 NY2d 270 [1991]) and other cases (*see People v Kisoon*, 8 NY3d 129 [2007]; *People v Tabb*, 13 NY3d 852 [2009]) by failing to give defense counsel meaningful notice of notes sent by the jury during its deliberations. This argument was not presented to the trial court or to the Appellate Division, but defendant argues that the *O'Rama* violation was a "mode of proceedings" error, as to which no preservation is required. Since the Appellate Division had no opportunity to consider this argument, we remit to that court so that it may do so, and may consider any other issues that are now proper for its review.

Accordingly, the order appealed from should be reversed and the case remitted to the Appellate Division for consideration of

issues now appropriate for that court's review, including issues raised but not determined on the appeal to that court.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order reversed, etc.