■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS PALENCIA, Appellant. [15 NYS3d 89]—

Appeal by the defendant from a judgment of the County Court, Nassau County (Spergel, J.), rendered September 13, 2013, convicting him of operating a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (3), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing before the Supreme Court, Nassau County (Ayres, J.), of that branch of the defendant's motion which was to suppress evidence of his refusal to submit to a chemical breath test, and the granting of the People's separate motion to admit the results of a prior portable breath test into evidence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

In the early morning hours of March 25, 2012, the defendant was involved in a motor vehicle accident in which he struck the rear end of another vehicle on a public highway. A New York State Trooper who responded to the scene observed that the defendant exhibited signs of intoxication, and administered several field sobriety tests, including a horizontal-gaze nystagmus test, a walk-and-turn test, and a one-legged foot-elevation test. Based on the defendant's performance, the trooper concluded that he failed all three tests. Thereafter, the trooper administered a portable breath test (hereinafter PBT) to the defendant. The trooper verbally instructed the defendant how to perform the PBT, and also physically demonstrated how to take the test. The defendant put his lips on the mouthpiece and exhaled until he was told to stop. The PBT showed a positive blood alcohol concentration, after which the trooper informed the defendant of that positive result. The trooper did not write down the result of the PBT, and he testified at the suppression hearing that it was not his general

practice to memorialize PBT results in writing. The trooper concluded that the defendant was intoxicated, and placed him under arrest. After the defendant was read a statement setting forth the consequences of any refusal by him to submit to further testing, as well as *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]), the defendant agreed to submit to a chemical breath test for the purpose of determining the alcohol content of his blood.

Thereafter, the trooper transported the defendant to the nearest New York State Police barracks, and prepared a device known as a Draeger instrument to administer the chemical breath test. The trooper instructed the defendant to blow into the mouthpiece until he was told to stop. According to the trooper, the defendant exhaled with a short breath, and stopped before being told to stop. The trooper removed the mouthpiece, replaced it with a new one, and had the defendant try again. Once again, the defendant did not provide a full breath sample. Thereafter, the trooper allowed the defendant three more opportunities to provide an adequate breath sample. However, each time the defendant only exhaled with a short breath. After the fifth attempt, the defendant told the trooper that he could not blow any longer, and the trooper deemed the defendant's behavior to be a refusal to submit to the test.

Prior to the start of trial, the People moved in limine to allow testimony about the administration and results of the PBT. The People argued that such testimony went to the defendant's state of mind and consciousness of guilt when he was administered the Draeger chemical breath test at the State Police barracks, inasmuch as he was able to provide a proper breath sample for the PBT. The defense objected, and argued that the evidence of the results of the PBT was inadmissible because the test was not reliable and the results were prejudicial. Subsequently, the Supreme Court issued a written decision explaining that it would allow those results into evidence if the People could show the reliability of the PBT device by confirming that it was on the conforming list approved by the Commissioner of the New York State Department of Health (hereinafter the Commissioner), that the test was properly administered, that the test was administered by a properly qualified administrator, and that the defendant had knowledge that the test results showed a presence of alcohol.

During the trial, which was conducted by the County Court, that court took judicial notice of the fact that the PBT device was on the Conforming Products List of Evidential Breath Alcohol Measurement Devices (hereinafter the conforming list)

compiled and approved by the Commissioner (*see e.g. People v Boscic*, 15 NY3d 494, 499-500 n [2010]). The trooper testified that he received training with respect to the administration of the PBT and the operation of the PBT device, that the PBT device appeared to be in working order, and that the defendant was able to blow into the device as instructed until the trooper told him to stop. The trooper also testified that the PBT results indicated the presence of alcohol, and that he informed the defendant of this. The court did not give a limiting instruction at that time but, rather, with the consent of counsel for both the People and the defendant, gave a limiting instruction during the jury charge. In sum and substance, the court instructed the jury that the testimony relating to the PBT was introduced by the People solely to demonstrate the state of mind of the defendant in connection with any subsequent conduct, and that the jury could not rely on the results of the PBT in determining whether the defendant was intoxicated.

On appeal, the defendant contends that he was deprived of his right to a fair trial based on the County Court's admission of the PBT results into evidence. We agree. Under the circumstances of this case, the probative value of the PBT evidence was outweighed by its prejudicial effect and, accordingly, should have been excluded (*see People v Caban*, 14 NY3d 369, 374-375 [2010]; *People v Scarola*, 71 NY2d 769, 777 [1988]; *cf. People v MacDonald*, 227 AD2d 672, 674 [1996]).

Generally, the result of a PBT "is not admissible to establish intoxication, as its reliability for this purpose is not generally accepted in the scientific community" (*People v Kulk*, 103 AD3d 1038, 1040 [2013]; *see People v Thomas*, 70 NY2d 823, 825 [1987], *affg* 121 AD2d 73 [1986]; *see also People v Schook*, 16 Misc 3d 1113[A], 2007 NY Slip Op 51411[U] [Suffolk Dist Ct 2007]). Here, although the PBT evidence was not introduced for the purpose of proving intoxication, since the jurors were permitted to hear that the PBT detected the presence of alcohol, the County Court created an unacceptable risk that the jurors would improperly consider the PBT evidence for this impermissible purpose. This risk was enhanced both by the County Court's determination to take judicial notice that the PBT was on the Commissioner's conforming list and the State Trooper's trial testimony that he was trained in the operation of the PBT device. The trooper's testimony in this regard, which was directed towards the issue of whether the PBT was reliable for its intended purpose—the assessment of the defendant's level of intoxication—was irrelevant to the defendant's state of mind at the time he submitted to the chemical breath

test at the State Police barracks. Thus, this testimony increased the risk that the jury would be unable to avoid considering the PBT evidence as proof of the defendant's intoxication.

Moreover, the risk that the jurors would consider the PBT results as evidence of intoxication was further magnified by the fact that the jurors were not given a limiting instruction at the time the PBT evidence was presented but, instead, only at the end of the trial. While limiting instructions can, in certain instances, function to alleviate the potentially prejudicial impact of evidence, under the particular circumstances of this case, the prejudicial impact of the PBT evidence was substantial and, contrary to the conclusion reached by our dissenting colleagues, this prejudice was not alleviated by the contents or timing of the limiting instruction given by the County Court (*see People v Clarke*, 90 AD3d 777, 777 [2011]; *People v Allen*, 85 AD3d 1042, 1043 [2011]).

The exclusion of the PBT evidence was further warranted since the limited testimony of the trooper did not establish the reliability of the PBT, nor did it explain the potential differences, if any, in the duration and volume of breath needed to be exhaled by the defendant when submitting to the PBT, as opposed to the chemical breath test administered at the State Police barracks that employed the Draeger testing device. There was no testimony whatsoever regarding when the PBT device was last calibrated and, as such, no way of knowing whether the device was indeed functioning properly or whether its results were reliable (*see People v Boscic*, 15 NY3d at 500). There was no testimony by the trooper or any other witness as to whether the duration and volume of breath needed to be exhaled by the defendant when blowing into the PBT device was more than, less than, or the same as the amount needed when submitting to the chemical breath test. As such, the jury was improperly invited to speculate that the duration and volume of breath needed to be exhaled by the defendant when blowing into both devices was the same and, therefore, that the defendant intended to provide an inadequate sample when he submitted to the chemical breath test (*cf. Vazquez v Costco Cos., Inc.*, 17 AD3d 350, 352 [2005]).

While the People argue that the reliability of the PBT is irrelevant because the evidence was not introduced for the purpose of proving the defendant's intoxication, one cannot ignore that when a lay juror is presented with evidence of this nature, i.e., an instrument able to detect the presence of alcohol, there is a strong likelihood that its result will be given

substantial weight, particularly in light of the lack of testimony comparing the duration and volume of breath needed to be exhaled so that both the PBT device and the Draeger chemical breath test device could properly and accurately measure blood alcohol content. As such, the prejudicial effect upon the jurors from hearing that the PBT detected the presence of alcohol substantially outweighed any probative value that this evidence might have had with respect to the defendant's state of mind at the time that he submitted to the chemical breath test at the State Police barracks.

Moreover, we find that the evidence of the administration and results of the PBT test was unnecessary given the totality of the circumstances. The trooper testified that the defendant failed all other field sobriety tests administered to him, and that, when he was brought to the State Police barracks, he made five unsuccessful attempts to take the chemical test, each time failing to follow the trooper's instructions. This provided the People with sufficient evidence to support their argument that the defendant evinced a consciousness of guilt without the need of introducing the PBT evidence.

The introduction of the PBT evidence was so prejudicial that it deprived the defendant of his constitutionally guaranteed right to a fair trial (see People v Henriquez, 3 NY3d 210, 210 [2004]; cf. People v Kulk, 103 AD3d at 1040).

Accordingly, a new trial must be ordered.

We need not address the defendant's remaining contentions, which have been rendered academic by our determination. Hinds-Radix, Maltese and LaSalle, JJ., concur.

Skelos, J.P., dissents, and votes to affirm the judgment, with the following memorandum, in which Miller, J., concurs: The majority concludes that the defendant's conviction must be reversed because the admission of evidence regarding the results of a portable breath test (hereinafter PBT), not for the purpose of proving intoxication, but for the limited purpose of demonstrating the defendant's state of mind when subsequently administered a chemical test, deprived the defendant of a fair trial. In my view, the PBT evidence was probative of the defendant's state of mind at the time he was administered the chemical test and, in light of the explicit limiting instruction provided by the trial court regarding the use of the evidence, its admission was not more prejudicial than probative. Since the defendant's other contentions on appeal lack merit, I therefore dissent, and would affirm the defendant's judgment of conviction.

On March 25, 2012, a New York State Trooper, after respond-

ing to the scene of a motor vehicle accident in which the defendant had been involved, administered several field sobriety tests to the defendant, who had exhibited signs of intoxication. The trooper determined that the defendant failed the field sobriety tests, and thereafter administered a PBT. The trooper advised the defendant that the PBT had shown that the defendant was intoxicated. The defendant was arrested, and upon being transported to the nearest New York State Police barracks and consenting to the administration of a chemical breath test, was given five opportunities to provide a sample for that test. Each time, the defendant failed to exhale a sufficient volume of breath into the machine to register a result, since the duration of his exhales was too short.

At trial, the People sought to introduce evidence that the defendant was administered a PBT, and that he was advised that the test showed that he was intoxicated. The People sought to introduce this evidence, not to prove intoxication, but to demonstrate the defendant's state of mind when he was subsequently administered the chemical breath test. Under the particular circumstances of this case, evidence of the PBT was properly admitted for that limited purpose (*see People v MacDonald*, 227 AD2d 672 [1996]).

Generally, "all relevant evidence is admissible unless its admission violates some exclusionary rule" (*People v Scarola*, 71 NY2d 769, 777 [1988]; *see People v Pearce*, 81 AD3d 856 [2011]). "Evidence is relevant if it has any tendency in reason to prove the existence of any material fact" (*People v Scarola*, 71 NY2d at 777; *see People v Mateo*, 2 NY3d 383, 424 [2004]). However, "[e]ven where relevant evidence is admissible, it may still be excluded in the exercise of the trial court's discretion if its probative value is substantially outweighed by the potential for prejudice" (*People v Mateo*, 2 NY3d at 424-425; *see People v Scarola*, 71 NY2d at 777).

Here, the evidence that a PBT was administered to the defendant and that he was told that it rendered a positive result for intoxication tended to show that his failure to exhale a sufficient volume of breath for a sufficient period of time into the chemical breath test device was purposeful and demonstrative of his consciousness of guilt. Thus, under the general rule, the PBT evidence was admissible for that limited purpose unless its probative value was "substantially outweighed" by its potential prejudicial effect (*People v Mateo*, 2 NY3d at 425).

The defendant could only be unduly prejudiced by the admission of the PBT evidence if the jury considered the evidence as proof of his intoxication. Thus, in my view, the trial court struck

the appropriate balance between probative value and unfair prejudice by permitting the evidence to be introduced, subject to an explicit instruction to the jury regarding the limited use of the evidence. In particular, during the charge, the jury was specifically instructed that the results of the PBT were admitted for the limited purpose of proving the defendant's state of mind in connection with his subsequent conduct, and that it could not rely upon the result of the PBT in determining whether the defendant was intoxicated. This was a clear and simple instruction that was amply sufficient to alleviate any potential prejudice resulting from the admission of the PBT evidence. A jury is generally presumed to follow the court's instructions (*see People v Morris*, 21 NY3d 588, 598 [2013]; *People v Mooney*, 62 AD3d 725, 727 [2009]; *People v Lugo*, 218 AD2d 711 [1995]) and, indeed, "we depend, for the integrity of the jury system itself, upon the willingness of jurors to follow the court's instructions in such matters" (*People v Berg*, 59 NY2d 294, 299-300 [1983]).

Reflective of that fact, courts have frequently permitted, where relevant, the introduction of evidence as potentially prejudicial as a defendant's alleged commission of uncharged crimes (*see e.g. People v Morris*, 21 NY3d at 597-598; *People v Tosca*, 98 NY2d 660 [2002]), even when committed against the very same complainant (*see e.g. People v Gopaul*, 112 AD3d 964, 965 [2013]; *People v Khan*, 88 AD3d 1014 [2011]), or involving the same or similar conduct for which he or she is being tried (*see e.g. People v Yusuf*, 104 AD3d 881, 883 [2013]). In these cases, the courts have held that limiting instructions were sufficient to ameliorate any potential prejudice (*see People v Morris*, 21 NY3d at 598; *People v Tosca*, 98 NY2d 660 [2002]; *People v Gopaul*, 112 AD3d at 965; *People v Yusuf*, 104 AD3d at 883; *People v Khan*, 88 AD3d 1014 [2011]). The same is true in the present case.

Contrary to the majority's concern, the People's failure to establish the reliability of the PBT device is not dispositive. As the trial court instructed the jury, the PBT evidence was admitted for the purpose of proving the defendant's state of mind when the chemical breath test was administered. Thus, the operative fact is that the defendant was told that the results of the PBT were positive for intoxication. Whether that result was correct or reliable is irrelevant.

Accordingly, in light of the trial court's limiting instructions, the PBT evidence was properly admitted because its probative value outweighed its prejudicial impact (*see People v MacDonald*, 227 AD2d 672 [1996]; *cf. People v Morris*, 21 NY3d at

598; *People v Tosca*, 98 NY2d 660 [2002]; *People v Gopaul*, 112 AD3d at 965; *People v Yusuf*, 104 AD3d at 883; *People v Khan*, 88 AD3d 1014 [2011]).

Additionally, the Supreme Court, after a pretrial hearing, properly declined to suppress evidence of the defendant's refusal to submit to the chemical breath test. There was sufficient evidence before that court to support the conclusion that the defendant was given clear and unequivocal warnings of the effect of his refusal, and that he persisted in his refusal to submit to the test by refusing to exhale a sufficient volume of breath into the machine for a sufficient period of time (*see* Vehicle and Traffic Law § 1194 [2] [f]; *People v Barger*, 78 AD3d 1191 [2010]; *People v Tetrault*, 53 AD3d 558, 559 [2008]; *cf. People v Madrid*, 52 AD3d 530, 531 [2008]).

Contrary to the defendant's further contention, the trial evidence demonstrated that the failure to obtain a chemical breath-test result at the police barracks was the result of the defendant's conduct, as opposed to a failure of the device (*see Matter of Johnson v Adduci*, 198 AD2d 352 [1993]; *People v Adler*, 145 AD2d 943, 944 [1988]). It was not necessary for the People to submit further evidence related to the accuracy of that device, since the People did not rely upon results obtained from the device to demonstrate intoxication (*see People v Adler*, 145 AD2d at 944).

I would therefore affirm the judgment.