■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAVEL KRUT, Appellant. [21 NYS3d 106]—

Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Collini, J., at trial; Rienzi, J., at sentence), rendered December 11, 2014, convicting him of assault in the second degree, resisting arrest, and driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3), upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by vacating the conviction of driving while intoxicated, vacating the sentence imposed thereon, and remitting the matter to the Supreme Court, Richmond County, for a new trial as to that count of the indictment; as so modified, the judgment is affirmed.

At about 2:00 a.m. on April 1, 2012, two police officers pulled over a vehicle driven by the defendant after he disregarded a yield sign, changed lanes without signaling, and stopped at a green light for up to 25 seconds. After observing the defendant's demeanor and detecting the odor of alcohol, one of the officers asked the defendant to blow into a portable breath test device (hereinafter PBT). The officer later testified that, according to the PBT, the defendant's blood alcohol content (hereinafter BAC) was .128%, which is above the legal limit of .08%. The officer allowed the defendant to call a relative in order to secure the vehicle. When that relative arrived at the scene, the defendant exited his vehicle and announced that he was leaving with his relative. At that point, one of the officers attempted to handcuff the defendant. However, the defendant resisted arrest and, after a prolonged struggle between the defendant and the two officers at the scene, the defendant was arrested and charged with assault in the second degree, resisting arrest, and driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3) under a theory of common-law intoxication.

Prior to opening statements at the defendant's jury trial, the parties noted that evidence regarding the results of the PBT

administered prior to the defendant's arrest was not going to be admitted at trial. The prosecutor did not mention the PBT evidence in his opening statement. However, in his opening statement, defense counsel, referring to a video of the incident taken from the patrol car, stated that one of the officers administered a PBT and then disposed of "the cap" or "whatever" after the defendant blew into it. Based on defense counsel's opening statement, which implied that the officer disposed of the PBT device, the trial court allowed the People to present evidence on their case-in-chief that, according to the PBT, the defendant's BAC result was .128%, higher than the legal limit of .08%. Additionally, one of the police officers testified that, when he stopped the defendant's vehicle, he could smell the odor of alcohol coming from the defendant's breath, the defendant's face was flushed, his speech was slurred, and his eyes were bloodshot.

The People further elicited testimony that the defendant was uncooperative throughout the stop, notwithstanding that the officers allowed him to make two phone calls before he exited his vehicle and to ask his relative to come to their location to pick up the vehicle. Upon exiting the vehicle, the defendant indicated that he was leaving the scene and going home with his relative. When one of the police officers attempted to handcuff the defendant, a struggle ensued. During the struggle, one of the officers sustained a laceration to the bridge of his nose, which required treatment with "medical glue," and left a scar that was still visible at the time of trial. The police officer also sustained a torn rotator cuff in the struggle, and was on sick leave for several weeks. The People submitted a video of the incident taken from the patrol car, which was played for the jury.

As part of his defense, the defendant took the stand and testified that he did not have anything to drink that night. The defendant further testified that the police officers did not tell him that he was being arrested, that he could not imagine why this incident happened, and otherwise suggested that he did not understand that he was being arrested for an offense. Defense counsel later argued that the defendant did not realize that he was being arrested. During the charge conference, defense counsel argued that the trial court should not include any references to the PBT in the jury charge regarding the offense of driving while intoxicated; the court denied the application. The jury found the defendant guilty of assault in the second degree, resisting arrest, and driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3) under a theory of common-law intoxication. The defendant appeals.

The defendant's challenge to the legal sufficiency of the evidence is only partially preserved for appellate review. In any event, viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish the defendant's guilt of each charge beyond a reasonable doubt (*see People v Tejeda*, 78 NY2d 936 [1991]; *People v Lundell*, 24 AD3d 569, 570 [2005]; *People v Galvin*, 253 AD2d 437, 438 [1998]). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342, 349 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe their demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633, 644-645 [2006]).

The defendant contends that the trial court erred in precluding him from testifying regarding his state of mind—to the effect that he did not realize that he was being arrested. "[W]here an actor's state of mind is a material issue, the actor is allowed to testify concerning such issue" (*People v Rivera*, 101 AD2d 981, 982 [1984], *affd* 65 NY2d 661 [1985]; *see People v McBee*, 143 AD2d 773, 774 [1988]). Under the circumstances, the defendant's state of mind was relevant to the charges of assault in the second degree (Penal Law § 120.05 [3]) and resisting arrest (Penal Law § 205.30), and we agree with the defendant that the court erred in preventing him from testifying as to his state of mind. However, we conclude that this error was harmless.

Where the error, as here, involves the denial of the defendant's constitutional right to present a defense, the " 'error can be harmless only if the evidence of guilt, without reference to the error, is overwhelming, and there is no reasonable possibility that the error might have contributed to the defendant's conviction, such that it is harmless beyond a reasonable doubt' " (*People v Thompson*, 111 AD3d 56, 67 [2013], quoting *People v Dunbar*, 104 AD3d 198, 214-215 [2013], *affd* 24 NY3d 304 [2014]). Here, the evidence of the defendant's guilt of both assault in the second degree and resisting arrest was overwhelming, and there is no reasonable possibility that the error might have contributed to the defendant's conviction for those offenses. "The police need not specifically inform a defendant that he is under arrest. His awareness that he is being arrested may be proven . . . from inferences logically drawn

from the attendant facts and circumstances" (*People v Galvin*, 253 AD2d 437, 438 [1998] [citations omitted]). Here, both the police officers and the defendant himself offered testimony demonstrating that he was pulled over by the police, instructed to blow into a PBT device, and thereafter directed to get out of his vehicle. In addition, one of the officers attempted to handcuff the defendant. Moreover, the trial court allowed defense counsel to argue in summation that the defendant did not realize that he was being arrested. Thus, there is no reasonable possibility that the defendant would have been acquitted of assault in the second degree and resisting arrest had he been permitted to testify as to his state of mind at the time of his arrest.

The challenges to the prosecutor's summation remarks are unpreserved for appellate review (*see* CPL 470.05 [2]). In any event, those challenged remarks were proper responses to arguments made by defense counsel on summation or fair comment on the evidence (*see People v Halm*, 81 NY2d 819, 821 [1993]; *People v Gonzalez*, 11 AD3d 558, 559 [2004]).

For the foregoing reasons, we affirm the defendant's convictions of assault in the second degree and resisting arrest.

However, the trial court committed reversible error with respect to the charge of driving while intoxicated, when it admitted the PBT result into evidence and then failed to instruct the jury, among other things, that such evidence may not be used to prove the defendant's intoxication. Thus, the defendant's conviction of driving while intoxicated, and the sentence imposed thereon, must be vacated.

Generally, the result of a PBT, such as an Alco-sensor, "is not admissible to establish intoxication, as its reliability for this purpose is not generally accepted in the scientific community" (*People v Kulk*, 103 AD3d 1038, 1040 [2013]; *see People v Thomas*, 70 NY2d 823, 825 [1987], *affg* 121 AD2d 73 [1986]; *People v Palencia*, 130 AD3d 1072, 1074 [2015]; *People v MacDonald*, 227 AD2d 672, 674 [1996], *affd* 89 NY2d 908 [1996]; *see also* Vehicle and Traffic Law § 1194 [2]). Contrary to the trial court's determination, isolated remarks during defense counsel's opening statement did not open the door for the People to introduce incriminating testimony about the PBT result as part of their case-in-chief, particularly in the absence of appropriate limiting instructions (*see generally People v Palencia*, 130 AD3d 1072 [2015]; *People v Kulk*, 103 AD3d at 1040; *cf. People v Martin*, 100 AD3d 930 [2012]). We note that the opening remarks at issue, regarding the officer discarding the PBT "cap," were at least partly offered in support of the

defense theory that the defendant was not aware that he was the subject of a lawful arrest on the night in question, which theory was offered to undermine the charges of assault in the second degree and resisting arrest. Further, we find that the People adequately responded to this remark by eliciting the officer's testimony that he disposed of the plastic cap because it was unsanitary, and this was standard procedure. Nonetheless, the People elicited testimony that, according to the PBT, the defendant's BAC was .128%, significantly higher than the legal limit of .08%, *before* defense counsel had an opportunity to raise this issue during cross-examination (*cf. People v Martin*, 100 AD3d 930 [2012]). Under these circumstances, it cannot be said that the defendant opened the door for the People to adduce evidence of an insufficiently reliable PBT result in order to prove the defendant's intoxication (*see generally People v Kulk*, 103 AD3d at 1040; *see also People v Melendez*, 55 NY2d 445, 451-453 [1982]; *cf. People v Martin*, 100 AD3d 930 [2012]; *People v Seavy*, 16 AD3d 1130, 1131 [2005]).

Thereafter, the trial court did not provide the jury with any limiting instructions regarding the PBT result (*cf. People v Palencia*, 130 AD3d 1072 [2015]; *People v Martin*, 100 AD3d 930 [2012]), but instead directed the jury to consider the PBT result as direct proof of the defendant's intoxication. The court told the jury that the PBT was a "generally accepted instrument in determining blood alcohol content," and that no scientific expert was necessary. This was error (*see* Vehicle and Traffic Law § 1194 [2]; *People v Palencia*, 130 AD3d at 1076; *People v Kulk*, 103 AD3d at 1040; *People v MacDonald*, 227 AD2d at 674). Under the circumstances, including the lack of evidence of admissible field sobriety tests, we find that this error was not harmless beyond a reasonable doubt.

The defendant's remaining contention, that the trial court erred in charging the jury with respect to his refusal to submit to a blood test at the hospital, is unpreserved for appellate review and, in any event, need not be reached in light of our determination to vacate the conviction of driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3). Mastro, J.P., Dickerson, Austin and Maltese, JJ., concur.