Brown v Askew (2022 NY Slip Op 00795)





Brown v Askew


2022 NY Slip Op 00795


Decided on February 4, 2022


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 4, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CARNI, AND BANNISTER, JJ.


1137 CA 20-00284

[*1]TIMOTHY BROWN, PLAINTIFF-RESPONDENT,
v
JASON E. ASKEW, DEFENDANT-RESPONDENT, AND WELL TIMED TRANSPORT, INC., DEFENDANT-APPELLANT. (APPEAL NO. 1.) 






BARTH SULLIVAN BEHR, BUFFALO (DOMINIC M. CHIMERA OF COUNSEL), FOR DEFENDANT-APPELLANT. 
CELLINO LAW LLP, BUFFALO (JEANNA M. CELLINO OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 
LAW OFFICE OF JENNIFER S. ADAMS, WILLIAMSVILLE (REBECCA POSTEK OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from an order of the Supreme Court, Erie County (John F. O'Donnell, J.), entered July 22, 2019. The order denied the motion of defendant Well Timed Transport, Inc. for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed.
Memorandum: Plaintiff Timothy Brown commenced a negligence action against defendant-plaintiff Jason E. Askew and defendant Well Timed Transport, Inc. (Well Timed), and Askew commenced a separate negligence action against Well Timed, each seeking to recover damages for injuries that he sustained in a multivehicle accident. The accident occurred in the afternoon on a section of Interstate 90 (I-90) westbound consisting of four driving lanes and an on-ramp/merging lane. After the on-ramp/merging lane expires, the rightmost lane of the four driving lanes becomes an off-ramp from I-90 headed toward another highway, thereby requiring any driver seeking to remain on I-90 to merge left before I-90 reduces to three through lanes. The speed limit on the subject portion of I-90 is 55 miles per hour. Askew drove down the on-ramp, merged into the rightmost lane, and then intended to merge left again into the right through lane in order to continue on I-90. Meanwhile, Brown, who was driving a tractor-trailer, was in the left-center lane, and a taxi for Well Timed was in the right-center through lane that would continue on I-90. It is undisputed that Askew began an attempt to merge into the right-center through lane but, ultimately, Askew's vehicle and the Well Timed taxi collided. The Well Timed taxi then hit Brown's tractor-trailer, which in turn hit the center barrier of I-90. The Well Timed taxi also struck the barrier and came to rest against it. Brown and Askew allegedly sustained serious injuries, and the driver of the Well Timed taxi died.
In appeal No. 1, Well Timed appeals from an order that denied its motion for summary judgment dismissing Brown's complaint and Askew's cross claim against it. In appeal No. 2, Well Timed appeals from an order that denied its motion for summary judgment dismissing Askew's complaint. We affirm in each appeal.
Well Timed contends that Supreme Court erred in denying its motions because it established as a matter of law that it was not negligent and that Askew was the sole proximate cause of the accident. On its motions, Well Timed "had the initial burden of establishing as a matter of law either that [it] was not negligent or that any negligence on [its] part was not a proximate cause of the accident" (Gilkerson v Buck, 174 AD3d 1282, 1283 [4th Dept 2019]; see [*2]Galletta v Delsorbo, 188 AD3d 1641, 1642 [4th Dept 2020]; see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Viewing the evidence in the light most favorable to Brown and Askew and affording them the benefit of every reasonable inference (see Esposito v Wright, 28 AD3d 1142, 1143 [4th Dept 2006]), we conclude in both appeals that Well Timed failed to meet that burden (see Gilkerson, 174 AD3d at 1283; see generally Zuckerman, 49 NY2d at 562).
Here, Well Timed submitted an accident reconstruction report and a police report that, along with the nonparty witness statements contained therein, support the conclusion that the Well Timed taxi was proceeding straight on I-90 in a nonnegligent manner when Askew negligently failed to observe the Well Timed taxi and then made an overcorrection and unsafe movements, thereby causing the accident. Well Timed's submissions, however, also contained differing versions of the accident that raise triable issues of fact regarding Well Timed's negligence (see Fayson v Rent-A-Center E., Inc., 166 AD3d 1569, 1570 [4th Dept 2018]; Bermejo v Khaydarov, 155 AD3d 597, 598 [2d Dept 2017]). In particular, the excerpts of Brown's deposition testimony raise triable issues of fact whether Well Timed's driver drove in a negligent manner by unsafely passing Brown on the right (see Vehicle and Traffic Law § 1123 [b]; Karash v Adetunji, 56 AD3d 726, 726-727 [2d Dept 2008]) at a speed in excess of the limit and imprudent for the conditions in the area of the merging lanes (see Vehicle and Traffic Law § 1180 [a], [b]) and by then, in a failure to exercise reasonable care, deliberately blocking Askew from merging into the right through lane (see Kadashev v Medina, 134 AD3d 767, 768 [2d Dept 2015]).
Well Timed nonetheless contends that those portions of Brown's testimony—which it submitted in support of its own motions—are unreliable and speculative and thus insufficient to raise a triable issue of fact. That contention lacks merit. Initially, to the extent that Well Timed suggests that we should disregard Brown's version of the accident as not credible, we reject that suggestion inasmuch as "[i]t is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact" (Vega v Restani Constr. Corp., 18 NY3d 499, 505 [2012]; see Rawls v Simon, 157 AD3d 418, 419 [1st Dept 2018]). In any event, Brown's testimony was based on his personal observations of the accident, not speculation (see Fayson, 166 AD3d at 1570).
With respect to Brown's testimony regarding the speed of the Well Timed taxi, "a 'lay witness will ordinarily be permitted to testify as to the estimated speed of an automobile, based upon the prevalence of automobiles in our society, the frequency with which most people view them at various speeds and an adequate foundation that the witness has estimated the speed of automobiles on prior occasions' " (Guthrie v Overmyer, 19 AD3d 1169, 1170 [4th Dept 2005]). Here, the deposition transcript establishes that Brown's testimony that his tractor-trailer was traveling 55 miles per hour or lower, and that the Well Timed taxi was passing on the right at 5 to 6 mph faster than the tractor-trailer, was based on his years of experience. Even if we were to disregard Brown's numerical estimate of the Well Timed taxi's speed, we conclude that other evidence submitted by Well Timed, including the pre-crash data in the accident reconstruction report indicating that Brown's tractor-trailer was traveling 56.5 miles per hour immediately before braking and the unrefuted evidence that the Well Timed taxi was passing the tractor-trailer, raises a question of fact whether the Well Timed taxi was speeding past Brown as it approached the merge lanes in which the accident occurred.
In addition, contrary to Well Timed's assertion, the evidence that the Well Timed taxi may have deliberately prevented Askew from merging does, in fact, have a "factual or evidentiary basis" in the form of Brown's personal observations as recounted in his deposition testimony. Brown observed that Askew's vehicle and the Well Timed taxi were driving "neck and neck" for a couple of seconds and that Askew's vehicle was trying to merge left, but the Well Timed taxi "was not letting [Askew] in" and was "imped[ing Askew] from coming over," even though the Well Timed taxi could have slowed down and allowed Askew to merge. Based on those observations and his experience, Brown anticipated that an accident was imminent. We thus conclude that Brown's testimony raises an issue of fact whether Well Timed's driver was operating the taxi with reasonable care to avoid any collision (see Kadashev, 134 AD3d at 768).
We also note that Well Timed's submissions contain yet another version of the accident as conveyed by Askew. In particular, Askew maintained at his deposition that an unidentified [*3]red car cut him off, which caused him to swerve to avoid contact with that car, thereby leading his vehicle onto the shoulder and then into a spin, before the Well Timed taxi made contact with his vehicle. Although Askew's version of the accident is largely contrary to the accounts of the other witnesses, "[s]uch conflicting versions of how the accident occurred raise credibility issues, and[, again,] '[i]t is not the court's function on a motion for summary judgment to assess credibility' " (Rawls, 157 AD3d at 419). Under Askew's version of the accident, there is a triable issue of fact "whether [the Well Timed driver] failed to see what was there to be seen and exercised reasonable care to avoid the collision" (Bermejo, 155 AD3d at 598).
Contrary to Well Timed's further contention, we conclude that Well Timed failed to meet its initial burden on its motions of establishing as a matter of law that Askew's negligence was the sole proximate cause of the accident (see Luttrell v Vega, 162 AD3d 1637, 1637 [4th Dept 2018]). Although Well Timed may have established that Askew's unsafe movements were, in the words of the accident reconstruction report, "[a] [p]rimary contributing factor in this collision" (emphasis added), "[t]he fact that [Askew] may have also been negligent does not absolve [Well Timed] of liability inasmuch as an accident may have more than one proximate cause" (Zbock v Gietz, 145 AD3d 1521, 1522-1523 [4th Dept 2016]; see Dunkle v Vakoulich, 173 AD3d 1662, 1663 [4th Dept 2019]). Here, for the reasons previously discussed, we conclude that there are triable issues of fact whether negligence on the part of Well Timed's driver was a proximate cause of the accident.
Based on the foregoing, we conclude that the court properly denied Well Timed's motions for summary judgment because it failed to make a prima facie showing of entitlement to judgment as a matter of law, thereby requiring denial of the motions "regardless of the sufficiency of the opposing papers" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
Entered: February 4, 2022
Ann Dillon Flynn
Clerk of the Court