People v Grant (2022 NY Slip Op 50788(U))

[*1]

People v Grant (Dana)

2022 NY Slip Op 50788(U) [76 Misc 3d 128(A)]

Decided on August 11, 2022

Appellate Term, Second Department

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on August 11, 2022
SUPREME COURT, APPELLATE TERM, SECOND
DEPARTMENT, 9th and 10th JUDICIAL DISTRICTS
PRESENT: : ELIZABETH H. EMERSON, J.P., JERRY GARGUILO, TIMOTHY S.
DRISCOLL, JJ

2020-1005 S CR

The People of the State of New York,
Respondent,
against
Dana R. Grant, Appellant. 

Suffolk County Legal Aid Society (Anju M. Alexander and Genevieve Cahill of counsel), for
appellant.
Suffolk County District Attorney (Kim Marie Carson of counsel), for respondent.

Appeal from a judgment of the District Court of Suffolk County, First District (Pierce F.
Cohalan, J.), rendered November 13, 2020. The judgment convicted defendant, upon a jury
verdict, of driving while intoxicated (per se) and common-law driving while intoxicated, and
imposed sentence. The appeal brings up for review an order of the District Court rendered
November 12, 2019 denying defendant's motion to suppress noticed statements and the fruits of
defendant's arrest.

ORDERED that the judgment of conviction is affirmed.
In the evening of December 13, 2018, defendant was arrested and charged with driving while
intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]) and common-law driving while
intoxicated (Vehicle and Traffic Law § 1192 [3]). At a September 26, 2019
Dunaway/Huntley hearing, an off-duty FBI special agent testified that, around 8
p.m. on December 13, 2018, he was driving home in his work vehicle eastbound on the Long
Island Expressway (LIE), when he spotted defendant's vehicle speeding towards and past his own
at well over 100 miles per hour (mph). The special agent followed and called 911 to report the
erratic way in which the vehicle [*2]was being driven. The
special agent testified that he "had to travel 110 [mph] just to keep up with [defendant's vehicle.
There were] a lot of lane changes, cutting people off, . . . driving very dangerous and erratically,
and I saw very few turn signals as well when lane changes were made." When the police did not
arrive within a few minutes of his call, the special agent, "concerned about public safety,"
activated the safety lights in his own vehicle and effected a traffic stop.
The arresting officer testified at the suppression hearing that, when he arrived on the scene,
he spoke with the special agent and learned about his observations. The officer then walked to
defendant's vehicle and observed that her eyes were bloodshot and glassy, her speech was slurred
and her breath had the strong odor of an alcoholic beverage. When asked by the officer,
defendant stated that she had drunk tequila earlier that day. Defendant also performed poorly on
multiple standard field sobriety tests (SFSTs), and the preliminary breath test (PBT) defendant
voluntarily took returned a positive result for the presence of alcohol. 
The officer placed defendant under arrest for driving while intoxicated. Defendant, who, up
that point, had been cooperative, became combative. She was recorded, while in the officer's
patrol vehicle, repeatedly kicking the plexiglass divider, calling the officer a "bitch" and using
other colorful language. Once transported to the police station, defendant consented to
breathalyzer testing, which returned a 0.17% blood alcohol content (BAC). Afterward, the officer
testified, defendant intentionally urinated on a desk in the police station. The defense did not put
forth any evidence at the hearing, and, on November 12, 2019, the court denied defendant's
suppression motion in its entirety after finding that the testimony of the special agent and police
officer was credible, that the noticed statements attributed to defendant were made during the
course of the officer's proper pre-arrest investigation, and that defendant's arrest was based upon
probable cause.
At a jury trial, the special agent and arresting officer's testimony was consistent with their
hearing testimony, but omitted any testimony regarding the PBT (see People v Chamberlain, 72 Misc 3d
126[A], 2021 NY Slip Op 50569[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists
2021] ["it is well settled that . . . evidence of a PBT is not admissible as proof of intoxication"]).
Defendant testified in her own defense and contested the credibility of the FBI special agent and
officer about the events surrounding her arrest. Defendant testified that, about four hours before
driving and being stopped by the special agent, she had drunk a small amount of Hennessy at the
home of her cousin.[FN1]
Defendant stated that, contrary to the special agent's testimony, she had [*3]driven on the LIE at speeds ranging between 60 and 80 mph, which
she said matched the general flow of the traffic at that time, and that she signaled every lane
change. With respect to the SFSTs, defendant claimed that the officer "never demonstrated them.
He just told me to do things and I did them as best I could." Defendant also claimed that the
officer placed handcuffs on her too tightly. 
When, on direct examination, defense counsel asked, "[H]ow did [the police officer]
handcuff you," defendant replied, "He breathalized me. He did that three times . . . and I watched
him too, everything. I never scored and that man continued to place them cuffs on me." However,
during cross-examination, when the prosecutor flatly asked, without defense objection, if
defendant "recall[ed] what that [PBT] reading was," defendant responded, "It's inadmissible but
I'm going to say it was a .21 [the officer] wrote."
Defendant testified that her behavior in the patrol vehicle did not reflect intoxication, since
she was not intoxicated, but rather her anger and frustration at her arrest and perceived
mistreatment by the officer. "I have a right to feel after [sic] what just happened to me,"
defendant explained. "I'm mad. . . . You don't have to be dr[u]nk to curse somebody out."
Defendant testified further that the 0.17% BAC was an incorrect result caused "[b]ecause I have
not one but two blood disorders. He would need a blood test to test me accurately." Defendant
acknowledged not telling the officer about either of these two unspecified blood disorders,
explaining, "I wasn't obligated to tell him nothing without my counsel present." Defendant also
denied urinating on the officer's desk, saying, "I don't know how that's possible if I'm handcuffed,
number one, and second, I'm handcuffed to the table. He should demonstrate it. . . . Where's the
DNA? Where's the proof?"
Following summations and jury deliberations, defendant was convicted of both counts of
driving while intoxicated. On November 13, 2020, the District Court sentenced defendant to
concurrent three-year terms of probation, a $500 fine for each convicted count, one year of
ignition interlock device (IID) use, and completion of the Impaired Driver Program. Defendant
also had to pay a statutorily-mandated surcharge.
Defendant's appellate contention that her vehicle's seizure by an off-duty FBI special agent
was without constitutional and statutory authority, requiring suppression of noticed statements
and other fruits thereof, is unpreserved, and we decline to address this issue as a matter of
discretion in the interest of justice. In any event, this argument is without merit. The
constitutional branch of defendant's claim—that, because the special agent was not trained
in how to pace moving vehicles and his work vehicle did not possess technology used by police
to more precisely calculate and document vehicular speeds, he was without reasonable suspicion
to effect the traffic stop—ignores the special agent's credible testimony about her extreme
speeding, swerving and failure to signal lane changes. Moreover, even a "lay witness is ordinarily
permitted to testify as to the estimated speed of an automobile based upon the prevalence of
automobiles in our society and the frequency with which most people view them at various
speeds" (Shpritzman v Strong, 248 AD2d 524, 525 [1998]; see Brown v Askew, 202 AD3d
1501, [*4]1503 [2022]). 
The second branch of defendant's unpreserved suppression argument—that her seizure
by the special agent was without statutory authority—is equally without merit. Because the
FBI special agent is a "peace officer" (see CPL 2.15 [1]), his "actions were valid if they
could properly have been performed by state law enforcement agents" (People v McLean, 99 AD3d 1111,
1111 [2012]). Such a peace "officer who has probable cause to believe that a driver has
committed a traffic violation may lawfully stop the vehicle" (id. at 1111). Additionally,
there was probable cause to effectuate defendant's arrest based upon the special agent's
observations of defendant's dangerous driving, which he communicated to the arresting officer,
when considered in conjunction with the officer's own direct observations of defendant's
demeanor and physical indicia of intoxication.
It is well settled that "the result of a PBT 'is not admissible to establish intoxication, as its
reliability for this purpose is not generally accepted in the scientific community' " (People v Palencia, 130 AD3d
1072, 1074 [2015], quoting People v Kulk, 103 AD2d 1038, 1040 [2013]). However,
defendant's unsolicited testimony during direct examination opened the door to rebuttal evidence
concerning the PBT, what it is, how it works and what results the arresting officer recorded when
defendant was tested. Defendant's reliance on People v Krut (133 AD3d 781 [2015]) in arguing to the contrary is
misplaced. In Krut, the Appellate Division, Second Department, held that the
nontestimonial, "isolated remarks during defense counsel's opening statement"—not, as
here, the testimony of the defendant, unquestionably a major witness in any criminal
trial—"did not open the door for the People to introduce incriminating testimony about the
PBT result as part of their case-in-chief" (id. at 784). The trial court did commit "error
with respect to the charge of driving while intoxicated, when it admitted the PBT result into
evidence and then failed to instruct the jury, among other things, that such evidence may not be
used to prove the defendant's intoxication" (id.; see People v Williams, 204 AD3d 704, 707 [2022]). However, any
such error "was harmless in light of the overwhelming evidence of [] defendant's guilt"
(People v DeLeon, 135 AD2d 555, 555-556 [1987]; see Williams, 204 AD3d at
707).
The prosecutor's cross-examination of defendant and commentary made during summations
were not so pervasive or prejudicial as to have denied defendant a fair trial. Also, defense
counsel's representation of defendant throughout the stages of this case was not ineffective.
Counsel's performance did not fall below the federal objective standard of reasonableness, and
there exists no reasonable probability that, but for whatever errors counsel may have made, the
results of the hearing or trial would have been different (see Strickland v Washington,
466 US 668, 694 [1984]; People v
Mehmood, 112 AD3d 850, 854 [2013]). Further, counsel's representation of defendant
was meaningful, in satisfaction of the state constitutional standard of effective assistance of
counsel (see People v Borrell, 12
NY3d 365, 368 [2009] ["To be meaningful, [] representation need not be perfect"]; People v Caban, 5 NY3d 143, 152
[2005]; People v Benevento, 91 NY2d 708, 712 [1998]). Counsel actively argued on
behalf of his client and crafted a reasonable hearing and trial strategy to combat the not
insignificant evidence of defendant's guilt. Granted, there were missed opportunities to object
during the trial, e.g., when [*5]the prosecutor asked defendant for
the results of her PBT, which even defendant commented from the witness stand was
"inadmissible" evidence. "Nevertheless, defendant's trial attorney's error in failing to object . . . ,
without more, 'was not so serious as to compromise defendant's right to a fair trial and did not
constitute ineffective assistance' " (Chamberlain, 2021 NY Slip Op 50569[U], *1,
quoting People v Stover, 178 AD3d
1138, 1147 [2019]). Further, much about which defendant complains concerning the
prosecutor's questioning of herself and commentary during summations was in fact not improper,
and "[t]here can be no denial of effective assistance of trial counsel arising from counsel's failure
to make a motion . . . that has little or no chance of success" (People v Carver, 27 NY3d 418, 421 [2016] [internal quotation
marks omitted]; see People v Caban,
5 NY3d 143, 152 [2005]). 
The trial evidence was legally sufficient to support defendant's conviction, as it was
"competent evidence which, if accepted as true, would establish every element of an offense
charged and the defendant's commission thereof" (CPL 70.10; see People v Dubarry, 25 NY3d 161, 178 [2015]; People v Gordon, 23 NY3d 643,
649 [2014]; People v Hines, 97 NY2d 56, 62 [2001]; People v Contes, 60 NY2d
620, 621 [1983]; People v Andujar,
166 AD3d 893, 894 [2018]). Defendant's conviction also was not against the weight of the
trial evidence (see People v
Danielson, 9 NY3d 342, 348-349 [2007]).
Finally, defendant's sentence was appropriate. The court imposed the minimum fine ($500),
license revocation period (six months) and mandatory IID period (one year) authorized by statute
(see Vehicle and Traffic Law § 1193 [1] [b] [i], [ii]; [2] [b] [ii]). Although this is
defendant's only misdemeanor conviction, the probationary sentence is also not unreasonable in
light of defendant's dangerous driving, her more-than-twice-the- legal-limit 0.17% BAC and her
actions while in police custody, including damaging a police vehicle and urinating on a police
desk. Defendant challenges, for the first time on appeal, the statutorily-mandated surcharge.
However, the surcharge is "not a part of a sentence" (People v Guerrero, 12 NY3d 45, 47 [2009]); as such, "errors
involving surcharges are not reviewable under the illegal sentence exception to the preservation
requirement" (People v Smith, 57
AD3d 1410, 1411 [2008] [internal quotation marks omitted]). 
Accordingly, the judgment of conviction is affirmed.
EMERSON, J.P., GARGUILO and DRISCOLL, JJ., concur.

ENTER:
Paul Kenny
Chief Clerk
Decision Date: August 11, 2022

Footnotes

Footnote 1: Hamilton Bogan testified for the
defense that he was home with defendant's cousin when defendant visited and drank Hennessy
that he poured for her. According to Mr. Bogan, defendant was "[n]ot at all" intoxicated, "not off
one small cup" of Hennessy, when she left his home.