OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
Defendant has been convicted of grand larceny in the third degree: He appeals from an order affirming the judgment of conviction bringing up for review an order denying suppression of pretrial identifications in addition to the trial court’s alleged error in denying his motion to exhibit his tattooed hands in evidence.
On September 2, 1981, at approximately 5:00 p.m., Joann Blaha was walking along Broadway with a companion when she noticed a man running toward her. The man was heavyset and of average height and he sported a red afro haircut and a full red beard. As the man came alongside Blaha he ripped a gold chain off her neck. The victim immediately gave chase for several blocks. After turning onto a side street, the man slowed his pace and Blaha was able to approach him from behind. Blaha began to curse the thief, who turned and faced her directly before resuming his flight. A male passerby joined in the renewed pursuit, yet the thief managed to hail a taxi and escape.
On September 8,1981, Blaha was introduced to Police Officer Daniel Murphy. In their conversation, Blaha told the officer of her recent experience and she described the chain snatcher. Officer Murphy told her that he had recently arrested a chain snatcher who fit her assailant’s description. Subsequently, Officer Murphy telephoned Blaha and requested that she come to the station to examine some photographs. He informed her that a suspect would be among those in the photo array. Blaha was shown six black and white photographs that had been converted from color shots. She chose defendant’s photo from among the group within 20 seconds. Officer Murphy thereupon showed Blaha the original color shot of defendant, which she also identified as the chain snatcher. Two months later, Blaha returned to the station to observe a lineup of six persons, including, she was informed, the person whom she had chosen from the photo array. She identified defendant as the thief despite the *740 fact that he had shortened and lightened his hair, shaved his beard and lost weight in the interim.
Following a Wade hearing, the hearing court denied defendant’s motion to suppress the pretrial identifications as well as the victim’s prospective in-court identification of defendant. Although noting several improprieties by Officer Murphy — telling the victim that he had a suspect, showing her a color photograph of defendant after she had chosen him from the black and white array and telling her that the person she had chosen would be in the subsequent lineup — the court found that those improprieties tainted neither the pretrial identifications nor the prospective in-court identification and that the identifications were based on the victim’s independent recollection of defendant from the theft and chase.
At trial, the victim recounted her lineup identification, noting the significant changes in defendant’s appearance. She also recognized a photograph of defendant that had been taken four days after the theft. Neither the victim’s companion at the time of the theft nor the passerby who assisted her in the chase was able to identify defendant at trial.
The Trial Judge denied a motion by defense counsel to introduce into evidence defendant’s hands, which were tattooed. The motion was denied for lack of a proper foundation inasmuch as there was no proof that defendant had the tattoos on the day of the theft. For the same reason the court denied defense counsel’s request to take the stand and testify that defendant had the tattoos when she first met him four days after the theft. Finally, the court denied a request that defendant be allowed to testify, without being subject to cross-examination regarding past convictions, that he possessed the tattoos on the date in issue.
The jury returned a guilty verdict against defendant, and he was sentenced to two to four years. The Appellate Division unanimously affirmed.
In urging reversal of his conviction, defendant argues that the pretrial identification procedures were so suggestive as to require a per se suppression under our holding in People v Adams (53 NY2d 241). Unlike the situation in Adams, however, where “under no view of the evidence could it be said that the station house identification was not suggestive” (id., at p 248), there is sufficient evidence here to support the suppression court’s finding that the identification procedures were not unduly suggestive. This court has held that an identification is not automatically contaminated by an officer’s remark that a suspect is in custody (People v Logan, 25 NY2d 184,192). Similarly, *741 the display of defendant’s color photograph after the victim had chosen his black and white photo from an array, and the indication to the victim that the person whose photo she had chosen would be in the subsequent lineup did not present a serious risk of influencing the victim’s identification of defendant from the lineup, particularly in light of the significant changes in defendant’s appearance between the time of the photograph and lineup. The present case is markedly different from People v Rahming (26 NY2d 411,415), in which the police told the victim that they would “bring out the man that she had picked out” in the photographic array, and thereupon produced the defendant, standing alone, whom the victim identified.
Because the pretrial identifications here were not unduly suggestive, they were properly admitted at trial. For the same reason, defendant’s contention that the in-court identification was tainted by the pretrial procedures must fail and we need not consider whether the in-court identification was based on the victim’s independent recollection of defendant from the theft and the chase.
Finally, the trial court did not abuse its discretion in refusing to allow defendant to display his tattooed hands in evidence or defense counsel to testify as to the appearance of defendant’s hands four days after the theft inasmuch as defendant offered no proof regarding the presence of the tattoos on the date in issue (see People v Shields, 81 AD2d 870). There likewise was no abuse in the court’s refusal to allow defendant to testify on this point, which testimony clearly would implicate his credibility, without being subject to cross-examination concerning his past convictions.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer, Simons and Kaye concur.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed in a memorandum.