OPINION OF THE COURT
Simons, J.
The principal issue presented in these unrelated appeals is whether the trial courts erred in refusing to allow defendants to demonstrate their voices to the jury. Inasmuch as the voice exemplars were offered as real or demonstrative evidence, defendants did not have an absolute legal right to admission of the evidence and under the circumstances presented we hold that neither court abused its discretion in refusing to admit it. Accordingly, the orders of the Appellate Division should be affirmed.
I
Defendant Michael Scarola was indicted for the crimes of robbery in the second degree, attempted rape in the first degree and assault in the second degree arising out of an incident occurring on April 18, 1984 in The Bronx. According to the People’s proof at trial, defendant followed Kathy Mc-Manus home from work one evening and attacked her in the vestibule of her apartment. Before opening the locked door to the lobby, McManus looked over her shoulder and saw defendant. He immediately placed his hand over her mouth, told her to be quiet and threw her against the wall. When she tried to scream, the defendant punched her in the jaw and said at least twice, "I have a knife. Don’t make me have to cut your heart out”. He demanded that she give him money. After taking $13, defendant punched McManus in the face again *774 and then ordered her to open the lobby door so that he could take her inside and have intercourse with her. Seeing a friend outside the building McManus screamed for help and defendant fled. The police apprehended defendant a short time later and the victim identified him as her assailant.
The defense was mistaken identity. Although McManus testified on cross-examination that her assailant had no noticeable speech impediment and that she had no trouble understanding any of his statements during the incident, defendant called his sister, and she testified that defendant talks through his nose "like he has a cold all the time” and that she has trouble understanding him when they have an extended conversation. On cross-examination the sister admitted that she had no degree in speech pathology, audiology, or any other medical discipline, and that based on her knowledge defendant would not have any problem saying "short sentences” of "maybe two or three words together”, such as "take the money.”
Based upon this foundation, defense counsel requested a ruling permitting defendant to take the stand to provide a voice exemplar for the jury establishing that he had a speech impediment. The trial court ruled that defendant could not testify without being subjected to cross-examination, not only about the sound of his voice — to which defendant consented— but also about the events of the incident insofar as they related to his voice and, for credibility purposes, questions concerning his prior convictions. In view of this ruling, defendant chose not to take the stand. The jury convicted him of robbery in the second degree and a unanimous Appellate Division affirmed the judgment of conviction. A Judge of this court granted defendant permission to appeal.
Defendant Henry Merchant was indicted for committing the crimes of robbery in the first degree, grand larceny in the third degree, criminal possession of stolen property in the third degree and criminal possession of a weapon in the fourth degree. According to the People’s proof at trial, at 10:45 p.m. on July 18, 1984 defendant accosted Michelle Sherrel with a knife, demanding, "Give me your wallet. I won’t hurt you”. He asked Sherrel how much money she had in her wallet and when she had difficulty finding her money buried in a change purse at the bottom of her handbag, he told her, "I am going to give you a few minutes to find that wallet. If you don’t find that wallet, I’m going to have to do some work on you.” *775 Eventually defendant reached into the victim’s handbag himself and took the small zippered change purse containing $12 and some change. He then asked what she held in her hand and when she responded that it was a radio he demanded both the radio and the headphones she was wearing. Before leaving, he asked if she lived in the area and then warned, "Don’t let me have to come back here and do some work on you.” Sherrel went home, reported the incident to the police and defendant was arrested the next morning. She identified him in a lineup conducted at the police station and at trial she testified that there was "no doubt” and "no question” in her mind that defendant was the man who robbed her.
The defense was alibi. Two of defendant’s longtime friends testified that he accompanied them to the movies at White-stone Cinema on the night of the robbery and that all three individuals stayed at the movies until after 11:30 p.m. William Beebe, who was employed as a security guard at the theatre, testified that he remembered that defendant was 1 of 3 individuals who tried to "sneak in” the theatre that night and that when he caught them he gave them free passes to the 10:00 p.m. showing of the movie.
Defendant elected not to testify but he sought permission to take the stand for the limited purpose of giving a voice exemplar. The court denied the application observing that in his opinion there was too great a risk that defendant would be able to fake a speech impediment before the jury.
Defense counsel then attempted to lay a foundation for the voice exemplar evidence. Defendant’s father testified that defendant had a speech problem for which he had been undergoing treatment all his life, that defendant’s speech at present was a little better than when he began treatment, but that he still talked through his nose. Defendant also called a speech therapist who had treated him for six months in 1983. She testified that defendant could not pronounce certain sounds correctly, that he had stoppages and sound repetitions in his speech similar to a stutterer and that because of his rapid rate of speech défendant often had difficulty correctly pronouncing multisyllabic words. On cross-examination, however, the therapist conceded that defendant could articulate, "I won’t hurt you, give me your wallet or I’ll do some work on you” without betraying any noticeable speech problem. She also noted that if defendant spoke in short sentences it was possible for him to "camouflage” his speech.
*776 After hearing this testimony, the trial court denied defense counsel’s renewed request to permit the voice exemplar evidence, noting that "any such offer would be subject to such mischief as to make it meaningless in the context of this case”. The jury convicted Merchant of robbery in the first degree, a unanimous Appellate Division affirmed the judgment and leave to appeal was granted by a Judge of this court.
II
In each case defendant contends that the trial court erred in denying him the opportunity to refute the complainant’s identification by demonstrating to the jury that he had a speech impediment. Unquestioned is defendants’ right to take the witness stand and testify, thereby waiving the privilege against self-incrimination and subjecting themselves to cross-examination about the incident itself, prior convictions, and prior bad acts (see, People v Betts, 70 NY2d 289). That is not what they sought to do, however; they wished to exhibit their voices to the jury. The relevance of the evidence they offered was not in what they would say, but in how they would say it.
Voice exemplar testimony has been accepted as nontestimonial in nature. Thus, the prosecution can require, for example, that a defendant speak in a station house lineup to aid the witnesses identification (United States v Wade, 388 US 218, 222) or provide a voice exemplar to a Grand Jury (United States v Dionisio, 410 US 1, 7). A defendant can even be compelled to speak at the trial itself without implicating the right against self-incrimination if doing so will aid a witness with an identification (People v Smith, 86 AD2d 251; see, Annotation, Criminal Defendant in Trial Demonstrations, 3 ALR4th 374, § 12).
Relying on these rulings and the general proposition that one of the essential ingredients of due process of law is reciprocity (see, Wardius v Oregon, 412 US 470, 472), defendants contend that if the State can compel a defendant to provide a voice exemplar to assist the prosecution at trial then the State must also permit a defendant to provide an exemplar during his defense if he or she so elects. Their argument does not withstand analysis. Whether an act is testimonial determines whether the State may compel a person to perform an act -without violating his or her 5th Amendment right, but the fact that an exhibition of a physical characteristic is not testimonial in nature does not necessarily require its *777 reception as evidence at trial (United States v Esdaille, 769 F2d 104, 107, cert denied 474 US 923; see also, People v Acevedo, 40 NY2d 701, 704-705; People v Selby, 56 AD2d 584, cert denied 434 US 845; United States v Lam Muk Chiu, 522 F2d 330, 331-332). The test of whether voice exemplar evidence should be admitted as real or demonstrative evidence is not whether the proposed exemplar would be communicative, but whether it is relevant and reliable (United States v Esdaille, supra).
In New York, the general rule is that all relevant evidence is admissible unless its admission violates some exclusionary rule (People v Alvino, 71 NY2d 233, 242; Ando v Woodberry, 8 NY2d 165). Evidence is relevant if it has any tendency in reason to prove the existence of any material fact, i.e., it makes determination of the action more probable or less probable than it would be without the evidence (People v Lewis, 69 NY2d 321, 325; Richardson, Evidence § 4 [Prince 10th ed]; Proposed Code of Evidence for State of New York § 401 [noting that its definition would "codify” existing law]). The voice exemplar evidence offered by these defendants was broadly relevant, and the trial courts could have exercised their discretion to admit it without permitting substantive cross-examination (see, People v Williams, 130 Misc 2d 773; see also, United States v Pastore, 537 F2d 675, 678 [admissibility of exemplar evidence should be left to the trial court’s discretion]). Not all relevant evidence is admissible as of right, however. Even where technically relevant evidence is admissible, it may still be excluded by the trial court in the exercise of its discretion if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury (People v Alvino, supra, at 242; People v Acevedo, 40 NY2d 701, 704, supra; cf., Uss v Town of Oyster Bay, 37 NY2d 639, 641). Considering the inherent lack of trustworthiness of defendants’ proposed exemplars and the difficulty of testing the authenticity of any alleged speech impediment they displayed, we cannot conclude that the trial courts abused their discretion in rejecting the proposed exemplars in these cases.
Initially, we note that voice exemplar evidence by its very nature is different from other common types of exemplar evidence. In People v Shields (81 AD2d 870), for example, the defendant attempted to display a 14-to-16-inch scar on his abdominal region that the complaining witness, a rape victim, did not mention. Since the defendant proffered hospital re *778 cords showing that the scar had antedated the crime, there was no possibility of the scar’s lack of authenticity. The same reasoning has been applied to tattoos on a defendant’s body. If a defendant can demonstrate that the tattoos predated the crime and that the crime victim would have had reason to notice the tattoos during the incident, it would be proper to permit the defendant to exhibit the tattoos to the jury without being subject to substantive cross-examination (compare, People v Rodriguez, 64 NY2d 738, 741 [no abuse of discretion to refuse to allow defendant to display his tattooed hands inasmuch as there was no independent evidence that the tattoos were present on the date of the crime], with United States v Bay, 762 F2d 1314 [with a foundation that the tattoos were present on the date of the crime, defendant should be allowed to show hands to the jury without being subjected to substantive cross-examination]). In contrast, voice exemplar evidence, as the trial courts in these cases recognized, is relatively easy to feign (see also, United States v Esdaille, supra, at 107-108; People v Harding, 163 Mich App 298, 413 NW2d 777, 790, vacated on other grounds — Mich —, 420 NW2d 826).
Defendants rely on State v Tillett (351 So 2d 1153 [La]). In that case, the complaining witness identified defendant, in part, because he had a Spanish accent. The defendant’s request to take the stand to read a passage for purposes of demonstrating to the jury that he did not have an accent was denied by the trial court but the Louisiana Supreme Court reversed. The case is distinguishable from those before us on grounds of relevance and reliability. In Tillett defendant had been identified by his accent and the court believed a voice exemplar reliable because it is more difficult for a person to feign the absence of an accent if he normally speaks with one. Neither of these defendants was identified by the victims by means of his speech and any attempt by defendants at trial to demonstrate the existence of a speech impediment or nasal quality in their voices would not prove that they had such a problem because of the ease in feigning the defect before a lay jury.
Turning to the facts of these cases, we conclude that the trial courts did not abuse their discretion in denying defendants permission to give the proposed exemplars. In neither case did the victim rely on defendant’s voice to identify him. Moreover, the foundation for the admission of the evidence, in each case did not rule out the possibility that defendants could feign the existence of a speech defect. Even the speech thera *779 pist, called as an expert witness by defendant Merchant, testified that he could have "camouflaged” any speech problem he had when he spoke in brief sentences similar to the ones the actual robber used when holding up Sherrel.
Finally, we find no merit to defendants’ contention that there must be a reversal because the trial courts made their rulings in the mistaken belief that they had no discretion to permit the introduction of voice exemplar evidence without subjecting the defendants to substantive cross-examination (see, People v Cronin, 60 NY2d 430). It is clear that both courts rejected the proffered demonstrative evidence because, in the exercise of their discretion, they found its probative value outweighed by its unreliability and potential for prejudice.
in
One other contention of defendant Scarola warrants comment.
During his trial, defendant learned that an eyewitness, Christopher Odierno, would be called. He decided to leave the courtroom during Odierno’s testimony, believing that Odierno’s ability to identify the assailant would be unduly influenced if he saw the defendant in the courtroom prior to any questioning. The court conducted an allocution to insure that defendant knowingly and voluntarily waived his right to be present while Odierno was on the witness stand and then permitted him to leave.
Odierno then testified that he was sitting on the window sill of his third-floor apartment when he saw a man, whom he described, follow McManus into her apartment building. A short time later he heard a scream and the same man ran out of the building. Minutes after the incident defendant was apprehended and Odierno identified him as the same man that he had seen. The prosecution then attempted to show Odierno a photograph of defendant and ask him if it portrayed the man. Defense counsel objected and claimed that the People should be required to use a photographic array rather than a single picture. The court overruled the objection, and through the use of the picture Odierno identified defendant as Ms. McManus’ assailant.
We find no error in the court’s ruling. The People could have compelled the defendant to be present for purposes of the identification (People v Winship, 309 NY 311, 313-314). Having knowingly and voluntarily absented himself, he *780 waived his right to object to the People’s use of a single photograph as opposed to a photographic array.
Accordingly, in each case, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
In each case: Order affirmed.