Smith, J.
(dissenting). Because the trial court abused its discretion when it admitted into evidence the testimony of a purported criminal profiler and the testimony of a young woman allegedly assaulted by the same attacker, I would reverse the order of the Appellate Division and. remand the action for a new trial.
Seventeen-year-old Fundisha Price was returning home from choir practice when she was accosted near the lobby elevator bank of her building and taken up to the roof landing at knife-point. Ms. Price was sexually assaulted and sodomized. The perpetrator, later identified as Ronnie Matthews, had entered the building through the front door that did not contain any locking device.* Ms. Price and her mother commenced this action against the New York City Housing Authority alleging *561 that its negligent failure to provide minimum security was the proximate cause of her injuries.
During the litigation, the Housing Authority conceded that it was negligent in failing to equip the building’s front door with a lock, conceded that the perpetrator was not a resident of the building, and conceded that the perpetrator entered the building through the unlocked front door. Thus, the only contested issue was whether the Housing Authority’s negligence was the proximate cause of Price’s injuries.
At trial, plaintiff elicited the testimony of Professor Hair, a professor of security management at John Jay College of Criminal Justice. Professor Hair, who spent 25 years in the New York City Police Department and is a retired deputy inspector of the police force, also serves as a consultant to several corporations, institutions, and housing management organizations on matters of security. Professor Hair testified that a lock is a delaying security device; its primary function is to create a delay in the time in which an intruder could effect an unauthorized entry. In creating this delay, a lock also serves as a deterrent. Professor Hair stated that because a lock lessens the chances of successfully breaking into a building, there is a greater risk of capture to the criminal. If a door or entrance has no lock, the risk of capture decreases and thus the opportunity to commit a criminal act increases.
The Housing Authority, in response, called to the stand, as the last witness before the jury, Peter Smerick, a partner and vice-president of a self-described forensic or behavioral science consulting firm in Virginia. The firm, which consisted of four retired FBI agents and one retired Secret Service agent, uses the collective knowledge of these men to address issues of criminal behavior and violent crime. According to Smerick, the firm is called upon to perform criminal profiling and violent crime analysis whereby its members analyze the behavior of a criminal offender in a particular case. Smerick was previously an FBI expert in document examinations, including fingerprints and handwriting analysis, and in forensic photography. The court qualified him as an expert in “criminal behavior analysis.”
In this case, Smerick was given numerous documents, including parole record hearings, police department investigative reports, indictments and other records pertaining to other *562 sexual assaults allegedly committed by Ronnie Matthews, and deposition transcripts of the victim and security experts. It is claimed that these documents provided information about Ronnie Matthews’ background and behavior. Based upon his training and review of the data, Smerick testified that, in his expert opinion, Ronnie Matthews, the person who assaulted Fundisha Price, was a predatory serial rapist and a calculating career criminal who would not have been deterred by a lock on the door.
This evidence shifted the jury’s focus away from the issue of proximate cause in this case. The trial court permitted Smerick to testify that there were six categories of rapists and that because Matthews was a so-called power assertive rapist, he would not have been deterred by a locked door. This evidence was totally irrelevant on the issue of whether it was reasonable for the jury to conclude that Matthews walked through an unlocked door prior to sexually assaulting the plaintiff. Again, the issue was not whether Matthews was the type of individual who would not have been deterred by a locked door but rather whether a jury could reasonably conclude that a door which was admittedly unlocked was a substantial factor in the assault upon the plaintiff.
I cannot agree with the majority that Smerick’s testimony was in rebuttal to testimony given by Professor Hair, Dr. Gold-stein and Detective Fleming.
Dr. Goldstein, a psychiatrist, was called to give a psychological assessment of the plaintiff. His conclusion was that as the result of being sexually assaulted, plaintiff was suffering “major depression with post-traumatic stress features.” He attributed a change in her work, study and outside activities to the assault. Detective Fleming was called because he was the arresting officer and a person who conducted an extensive investigation of the crime. Smerick was not qualified to nor did he rebut the testimony of Dr. Goldstein. Moreover, there was no challenge by Smerick to the investigation by Detective Fleming.
“The guiding principle is that expert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror” (De Long v County of Erie, 60 NY2d 296, 307). The expert “should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion *563 rendered is reliable” (Matott v Ward, 48 NY2d 455, 459). The expert’s opinion cannot be founded upon speculation or supposition (id., at 463).
Though Smerick’s experiences with the Federal Bureau of Investigation were varied, his testimony did not clarify an issue or provide general or technical information from which a jury could draw factual inferences. While Smerick testified that he was trained to analyze information and draw conclusions about the identity of criminal suspects based on data provided and clues left behind, his testimony in this case went far beyond even his own training or experiences. In this case, Smerick rendered an opinion regarding Matthews’ inner thoughts and future actions; he purported to be capable of "getting inside [the] mind” of Ronnie Matthews. But no foundation was established demonstrating Smerick’s qualification to engage in such an activity. It does not appear that Smerick had any formal training in psychology or the behavioral sciences which would qualify him to forecast Matthews’ future behavior. His testimony regarding what Matthews would have done had a lock been in place was sheer speculation.
Moreover, it cannot be argued that Smerick’s testimony was brought in rebuttal to the testimony of Professor Hair. The primary focus of Professor Hair’s testimony was upon the properties of a lock and the manner in which a lock serves to secure a given area. Smerick’s testimony went beyond the properties of a lock. In fact, Smerick’s testimony had nothing at all to do with a lock, but was focused on the "properties” of the perpetrator. It cannot reasonably be said that Professor Hair opened the door to such testimony.
Finally, the testimony of another young woman sexually assaulted by Ronnie Matthews in another apartment complex should not have been presented to the jury. That individual testified that though the front door of her building had been locked, Matthews was already inside of her building when she passed through the front door. This testimony was adduced, it appears, to buttress the contention that Matthews would have found a way" to enter the building notwithstanding the presence of a lock. However, there was no evidence demonstrating that Matthews was not a guest of a tenant in that particular building or that he entered that building along with another resident, or even that he entered the building in another manner. No foundation existed from which a fact finder could infer that because Matthews entered one building with a locked front door, Matthews could enter all buildings with locked doors.
*564 Indeed, this victim’s testimony was simply irrelevant. “Evidence is relevant if it has any tendency in reason to prove the existence of any material fact, i.e., it makes determination of the action more probable or less probable than it would be without the evidence” (People v Scarola, 71 NY2d 769, 777). That Matthews gained entry into this particular building is not probative of whether he would have been able to gain entry into plaintiff’s building had defendant placed a lock on the front door. The young woman’s testimony could not and did not address or clarify the critical issue before the jury: whether defendant’s failure to place a lock on the front door of Fundisha Price’s apartment building was the proximate cause of the sexual assault.
Finally the court’s charge was flawed. The court’s charge was that “it must be demonstrated if plaintiff is to establish that an unlocked or defective door was a proximate cause, that other means of access have been ruled out. I use the term ruled out as doctors sometimes do.” Contrary to this charge, plaintiff was required to prove only that it was “more likely” than not that an assailant entered the premises through an unlocked door (Schneider v Kings Highway Hosp. Ctr., 67 NY2d 743, 745; Burgos v Aqueduct Realty Corp., 92 NY2d 544).
In sum, the admission of Smerick’s testimony and that of another victim of sexual assault were irrelevant to the proximate cause issue in this case and constituted prejudicial error. The charge to the jury was also flawed.
Judges Bellacosa, Levine, Ciparick and Wesley concur with Chief Judge Kaye; Judge Smith dissents and votes to reverse in a separate opinion.
Order affirmed, with costs.

 Between December 20 and December 22, 1987, several victims viewed a photo array of various paroled offenders. Ronnie Matthews was identified by some of the victims as a possible suspect. On December 23, 1987 two officers from the Manhattan Sex Crimes Squad apprehended Matthews in the hallway of 210 West 153rd Street. He was brought to the Housing Authority Police Department for the purpose of conducting lineup identifications and *561 he was positively identified by four of the victims. Matthews was then arrested.