2012-2810 N CRThe People of the State of New York, Respondent, against
against
Nicolas Pierre-Louis, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, NO. 2013-504 N CR NICOLAS PIERRE-LOUIS, Appellant.



Appeals from two judgments of the District Court of Nassau County, First District (Sondra K. Pardes, J.), both rendered December 18, 2012. The judgments, after a nonjury trial, convicted defendant of criminal contempt in the second degree (appeal No. 2013-504 N CR), and of criminal contempt in the second degree and aggravated harassment in the second degree (appeal No. 2012-2810 N CR), respectively.




ORDERED that, on the court's own motion, the appeals are consolidated for purposes of disposition; and it is further,
ORDERED that the judgment convicting defendant of criminal contempt in the second degree (appeal No. 2013-504 N CR) is affirmed; and it is further,
ORDERED that the judgment convicting defendant of criminal contempt in the second degree and aggravated harassment in the second degree (appeal No. 2012-2810 N CR) is modified, on the law, by vacating the conviction of aggravated harassment in the second degree and dismissing so much of the accusatory instrument as charged that offense; as so modified, that judgment of conviction is affirmed.
This case involves the strained relationship between defendant, Nicolas Pierre-Louis, and his sister, the complainant. On April 29, 2010, an order of protection was issued by the Nassau County District Court in favor of defendant's sister and against defendant. The order was effective until April 28, 2011. On June 22, 2010, defendant called his sister at her home, and left [*2]a message on her answering machine calling her, among other things, a "slut" and a "whore." Defendant was arrested, and charged with criminal contempt in the second degree (Penal Law § 215.50 [3]), for violating the April 29, 2010 order of protection. Defendant appeals from a judgment convicting him, following a nonjury trial, of this charge.
On June 7, 2011, the Nassau County Family Court issued another order of protection, in favor of defendant's sister and against defendant. The order was effective until December 6, 2011. On November 17, 2011, while defendant and his sister were at the Family Court Building, he allegedly told her, "your case is over, bitch." Defendant was arrested for criminal contempt in the second degree for violating the June 7, 2011 order of protection. Defendant was acquitted of this charge.
Two days later, on November 19, 2011, defendant called his sister at her home and told her that her order of protection had expired. Defendant was arrested and charged with criminal contempt in the second degree and aggravated harassment in the second degree (Penal Law § 240.30 [1] [a]) for violating the June 7, 2011 order of protection. Defendant appeals from a judgment convicting him, following a nonjury trial, of both of these charges.
On appeal, the parties agree that the conviction of aggravated harassment in the second degree must be vacated and so much of the accusatory instrument as charged that offense dismissed because the Court of Appeals has determined that Penal Law § 240.30 (1) (a) is unconstitutional (see People v Golb, 23 NY3d 455, 466-468 [2014]). Defendant also contends that the information with respect to the June 7, 2011 order of protection is jurisdictionally defective, claiming that the information failed to establish that defendant had knowledge of the order and its contents; that the evidence was legally insufficient to support either of the convictions of criminal contempt in the second degree; that the verdict of guilt with respect to these charges was against the weight of the evidence; that the District Court erred in failing to rule on defendant's motion to dismiss based on the People's inadequate opening statement; and that the District Court erred in permitting the prosecutor to ask defendant if he had called his sister a "slut" and a "whore" in the past.
The factual part of the information with respect to the charge of criminal contempt in the second degree involving the violation of the June 7, 2011 order of protection alleged that, at about 1:30 p.m. on November 19, 2011, upon information and belief, defendant "[d]id make a phone call to the complainant and stated, [y]ou know your order is expired.' The defendant verbally identified himself to the complainant during this phone call. The defendant and the complainant are brother and sister and the complainant is quite familiar with his voice. The complainant instantly felt intimidated and threatened by the defendant's statement. The actions and conduct of the defendant put him in direct violation of a valid Nassau County Family Court Temporary Order of Protection that was issued to the complainant on June 7th, 2011 . . . stating that the defendant shall refrain from communication or any other contact with the complainant. The defendant was present in court and was advised of the issuance of this Order on June 7th, 2011. This Order expires on December 6th, 2011. The source of said information and belief is the . . . Valid Family Court Order of Protection which [is] attached hereto and made a part hereof."
A copy of the June 7, 2011 Family Court order of protection, which was attached to the information, indicates on its face, "[b]oth parties present in court." The order also contains several boxes on the last page. An "X" appears in the box next to "[p]arty against whom order was issued was advised in Court of issuance and contents of Order." An "X" also appears next to "[o]rder mailed on." The line next to those words is blank, but under the boxes, there is handwriting indicating, "6-8-11 mailed P, R."
Defendant's challenge to the facial sufficiency of the accusatory instrument is jurisdictional (see People v Alejandro, 70 NY2d 133 [1987]) and must be reviewed despite defendant's failure to raise the issue in the District Court (see People v Kalin, 12 NY3d 225, 229 [2009]).
An element of criminal contempt in the second degree (Penal Law § 215.50 [3]) is that [*3]the defendant had knowledge of the provisions of a lawful order of protection, although not necessarily through actual service of the order (see Matter of McCormick v Axelrod, 59 NY2d 574, 583 [1983]; People v Caruso, 39 Misc 3d 137[A], 2012 NY Slip Op 52461[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2012]). Where an information, together with an attached order, contains factual allegations that the defendant was served with the order or was present in court when it was issued, this element has been satisfied (see People v Konieczny, 2 NY3d 569, 576 [2004]; People v Casey, 95 NY2d 354, 359 [2000]; People v Caruso, 39 Misc 3d 137[A], 2012 NY Slip Op 52461[U]; People v Araujo, 48 Misc 3d 1219[A], 2015 NY Slip Op 511169[U] [Sup Ct, NY County 2015]). The testimony of court officials or a police officer who was present in court when the order was issued can establish a defendant's knowledge of an order of protection and its contents (see People v Dixon, 118 AD3d 1188, 1189 [2014]; People v Audi, 88 AD3d 1070, 1072-1073 [2011]; People v D'Angelo, 284 AD2d 146 [2001], affd 98 NY2d 733 [2002]). In addition, "[n]otice of the contents of, and therefore of the conduct prohibited by, an order of protection may be given orally or in writing" (People v Clark, 95 NY2d 773, 775 [2000]).
Here, a copy of the June 7, 2011 Family Court order of protection, which was annexed to the information, together with the allegations in the factual portion of the information, were sufficient to establish, prima facie, that defendant was aware of the order of protection and its contents (see People v Carthew, 19 Misc 3d 138[A], 2008 NY Slip Op 50879[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2008]; People v Whidbee, 8 Misc 3d 1023[A], 2005 NY Slip Op 51239[U], *4-5 [Crim Ct, Kings County 2005]; cf. People v Bulgin, 105 AD3d 551 [2013]).
In his opening statement, the prosecutor told the court that, on June 22, 2010, defendant left a voice mail for his sister and "disguised his voice . . . . But his sister, who has known her brother for her whole life, still recognized her own brother's voice" calling her "a whore and a slut." The prosecutor continued that, at approximately 1:30 p.m. on November 19, 2011, defendant called his sister and said, "[y]ou know your order is expired." "[T]he defendant repeatedly violated valid stay-away orders of protection which he was personally advised of. He did so knowingly and intentionally."
Defendant moved for a trial order of dismissal, arguing that the opening statement was inadequate, as the prosecutor had not sufficiently alleged that "there were valid orders of protection on each docket." Defendant argued that there was no testimony as to the dates of the orders of protection, the court that had issued those orders, or when they had been issued, nor did the prosecutor allege intent. The District Court stated, "I didn't hear any specific information about the dates of the orders, when she obtained them, [or] who signed them," and afforded the People "one opportunity to correct any deficiencies in their opening statement."
The prosecutor, in pertinent part, stated that, with respect to the June 22, 2010 incident, "defendant violated a [District] Court order signed by the Honorable Judge Knobel advising the defendant personally in court on April 29th, 2010 and that order was in effect until April 28th, 2011." The prosecutor stated that the November 19, 2011 incident involved an order of protection "signed by Judge Stacy Bennett on June 7th, 2011 and was in effect until December 6th of 2011," and that the "orders were all personally served on the defendant, he was advised of each order and was aware of all the provisions of each order and knew that he was required to stay away on each date of incident based on these specific orders of protection."
Defendant renewed the motion for a trial order of dismissal on the ground that the People's opening did not allege "whether or not that lawful mandate was in fact a stay-away or a do-not-harass order of protection." The prosecutor replied that he had stated that "they were all valid stay-away orders of protection as to each docket."
The District Court reserved decision on the renewed motion for a trial order of dismissal, but defendant did not inform the court that it could not "allow the trial to proceed without first ruling on the motion" (People v Kurtz, 51 NY2d 380, 386 [1980]). The court never expressly ruled on the motion.
Contrary to defendant's contention, during his original opening statement, the prosecutor told the court that "defendant repeatedly violated valid stay-away orders of protection which he [*4]was personally advised of. He did so knowingly and intentionally." Thus, defendant's claim that the opening statement contained no indication whether the orders of protection were categorized as stay-away or do-not-harass orders is without merit. The prosecutor generally "set forth the nature of the charge[s] against the accused and state[d] briefly the facts" he expected to prove, along with the evidence he planned to introduce in "support of the same" (People v Kurtz, 51 NY2d 380, 384 [1980]; see People v Tzatzimakis, 150 AD2d 512 [1989]). Moreover, even if the prosecutor's opening statement was defective " absent bad faith or undue prejudice, a trial will not be undone' " based on such a defect (People v Kurtz, 51 NY2d at 385, quoting People v De Tore, 34 NY2d 199, 207 [1974]). There was no bad faith or undue prejudice in this case.
Defendant's claim, that the evidence with respect to the violation of the June 7, 2011 order of protection on November 19, 2011 is legally insufficient to support his conviction of criminal contempt in the second degree, is preserved for appellate review. Defendant argued in his motions for dismissal, both at the close of the People's case and at the close of all of the evidence, that there was no evidence that defendant had been served with the June 7, 2011 order of protection in court, or that "defendant was served" by way of "his signature in writing or orally acknowledging the terms of conditions." He argued that the People were required to call a court reporter or clerk to testify that defendant had been served in the courtroom and advised of the order of protection and its terms and conditions.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620 [1983]), we find that defendant's guilt of both charges of criminal contempt in the second degree was established beyond a reasonable doubt. The People presented sufficient evidence, by way of the face of the June 7, 2011 Family Court order of protection, that both parties had been present in court, that defendant had been advised of its issuance and contents, and that the order had been mailed to both parties on June 8, 2011. Thus, the evidence was legally sufficient to prove that defendant was aware of the June 7, 2011 order of protection and its contents (see People v Hazlewood, 297 AD2d 752, 753 [2002] ["defendant did not sign the order, but on its face the order indicated that the defendant was present in court when the order was issued"]).
The evidence was also legally sufficient to establish that defendant had called his sister on November 19, 2011. She unequivocally testified that the caller stated, "[t]his is your brother, Ernest [defendant's nickname]." She asked defendant why he was calling her, and then screamed, "[d]on't call me. I'm going to call the police." She was "extremely scared" and very upset. Defendant stated, "[y]ou know your order is expired." During cross-examination, when counsel asked whether it was possible that her former boyfriend had called her on November 19, 2011, the complainant replied, "[a]bsolutely positively a hundred percent . . . it was Ernest. He identified himself as Ernest, I recognized him to be Ernest, it was Ernest."
The evidence was also legally sufficient to establish that defendant left a telephone message for his sister on June 22, 2010. She unequivocally testified that defendant had attempted to disguise his voice, that he had done so when he was younger, and that he had previously used the vulgar terminology with which he had described her on the telephone message. Defendant's claim that the voice was computer-generated is based on counsel's suggestions in his questions on cross-examination. The complainant also testified that her former boyfriend had never called her a slut or a whore, and that she could differentiate his voice from defendant's voice. A Nassau County police detective testified that, during a telephone conversation with defendant, while she was investigating a message defendant had left with his father in March 2010, defendant told her, "[m]y sister's a whore and a slut and I hope she burns in hell." We note that defendant's sister's testimony was sufficient to authenticate the cassette tape of the June 22, 2010 telephone message (see People v Ely, 68 NY2d 520, 527 [1986]; People v Arena, 48 NY2d 944, 945 [1979]; People v Lancaster, 121 AD3d 1301 [2014]; People v Donaldson, 89 AD3d 1472 [2011]; People v Myers, 87 AD3d 826, 828 [2011] [the "victim identified the voice on the tape as defendant's voice, and she recalled the conversation"]; People v Shapiro, 227 AD2d 506, 507 [1996]).
Consequently, defendant's guilt of both charges of criminal contempt in the second degree was supported by legally sufficient evidence.
In conducting an independent review of the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]), this court accords great deference to the factfinder's opportunity to view the witnesses, hear their testimony, and observe their demeanor (see People v Mateo, 2 NY3d 383 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]; People v Zephyrin, 52 AD3d 543 [2008]). Upon reviewing the record, we find that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633 [2006]; People v Celifie, 47 Misc 3d 133[A], 2015 NY Slip Op 50466[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2015]), as an acquittal would have been unreasonable. 
Defendant's remaining contention is without merit (see People v Scarola, 71 NY2d 769, 776 [1998]; People v Fuschino, 278 AD2d 657, 659 [2000]).
Accordingly, the judgment convicting defendant of criminal contempt in the second degree is affirmed. The judgment convicting defendant of criminal contempt in the second degree and aggravated harassment in the second degree is modified by vacating the conviction of aggravated harassment in the second degree and dismissing so much of the accusatory instrument as charged that offense.
Marano, P.J., and Garguilo, J., concur.
Decision Date: September 20, 2016