■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES WILLIAMS, Appellant. [46 NYS3d 9]—

Judgment, Supreme Court, New York County (Laura A. Ward, J., at suppression hearing; Melissa C. Jackson, J., at jury trial and sentencing), rendered December 23, 2013, convicting defendant of assault in the first degree, and sentencing him, as a second violent felony offender, to a term of 18 years, unanimously affirmed.

The court properly exercised its discretion in permitting a slang expert, whom the court deemed an expert in "street lingo and terminology," to testify regarding the possible meanings of several words and phrases used by defendant in a recorded call he made during his pretrial incarceration. This testimony did not violate the principles articulated in *People v Inoa* (25 NY3d 466, 474 [2015]). The witness, who notably had no connection with the investigation of the case, neither testified about the general meaning of the recorded conversation nor relied on the other facts of the case in translating the handful of slang expressions about which he testified. The record of the expert's testimony, viewed as a whole, demonstrates that the court did not permit the expert to state what the slang terms meant in the context of the case; that determination was left for the jury to make. To the extent any slight portion of the testimony could be viewed as interpreting the conversation, the error was harmless (*see People v Crimmins*, 36 NY2d 230 [1975]). Defendant's argument that the expert's description of his police experience and qualifications in translating slang tended to connect defendant with gang or drug activity is unpreserved and we

decline to review it in the interest of justice. As an alternative holding, we reject it on the merits.

The court properly permitted the victim to testify about an anonymous threatening phone call he received approximately 10 hours after he was attacked, warning him not to pursue the matter. The evidence was admissible, notwithstanding that the People could not demonstrate that defendant knew the caller or authorized the call, because it was not introduced to prove consciousness of guilt, but rather to support particular aspects of the People's theory of the case (*see generally People v Scarola*, 71 NY2d 769, 777 [1988]). Specifically, in conjunction with elements of defendant's recorded call, the anonymous threatening call tended to support the theory that someone who knew the victim and his travel habits, and bore a grudge against him, paid defendant to attack him.

The court correctly denied defendant's suppression motion. The police had reasonable suspicion to detain defendant for a showup identification, based on a radioed description that was sufficiently specific, in context, because the extremely close spatial and temporal proximity between the crime and the police observation of defendant made it "highly unlikely that the suspect had departed and that, almost at the same moment, an innocent person of identical appearance coincidentally arrived on the scene" (*People v Johnson*, 63 AD3d 518, 518 [2009], *lv denied* 13 NY3d 797 [2009]). At the very least, the police acquired reasonable suspicion when defendant fled after the police pulled their car in front of him to cut him off. Defendant did not preserve his claim that the officers' conduct in blocking his path was a seizure that already required reasonable suspicion, and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits (*see People v Stevenson*, 55 AD3d 486 [1st Dept 2008], *lv denied* 12 NY3d 788 [2009]). The showup identification procedure conducted following the stop was not unduly suggestive, because "the overall effect of the allegedly suggestive circumstances was not significantly greater than what is inherent in any showup" (*People v Brujan*, 104 AD3d 481, 482 [1st Dept 2013], *lv denied* 21 NY3d 1014 [2013]).

We perceive no basis for reducing the sentence. Concur— Friedman, J.P., Sweeny, Richter, Manzanet-Daniels and Kapnick, JJ.