People v Martinez (2026 NY Slip Op 50308(U))

[*1]

People v Martinez

2026 NY Slip Op 50308(U)

Decided on March 12, 2026

Supreme Court, Bronx County

Stone, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 12, 2026
Supreme Court, Bronx County

The People of the State of New York

againstJoseph Martinez, Defendant.

Ind. No. 00863-21

ADA John Miras and ADA Ché Van Eer, Office of the Bronx County District Attorney, for the People.Troy Smith, Esq., and April Cohen, Esq., for the Defendant.

Audrey E. Stone, J.

On February 24, 1999, Minerliz Soriano, a 13-year-old girl from the Bronx was reported missing from her home at 1540 Pelham Parkway South. Four days later her body was found in a dumpster near a video store at Bay Plaza Shopping Center. For many years, the case remained cold until familial DNA testing linked the defendant to a stain on the decedent's sweater. The Office of the Chief Medical Examiner considered the stain semen. Subsequently, in 2021 the defendant was indicted for two counts of Murder in the Second Degree for her death. The Court presided over a lengthy trial of the defendant, in which he was found guilty of Murder in the Second Degree for Intentional Homicide and Murder in the Second degree premised on Felony Murder. The defendant now moves to set aside the verdict under CPL § 330.30(1). The People oppose. The Court denies the motion without a hearing.
A motion under CPL § 330.30(1) permits a trial court to vacate a verdict due to a record-based ground that would require reversal or modification on appeal as a matter of law. As with a direct appeal, the arguments presented by the defendant on a CPL § 330.30(1) motion must be preserved to raise a reviewable issue of law (People v Sudol, 89 AD3d 499, 499-500 [1st Dept 2011]). The arguments raised also cannot, as with a direct appeal, be raised for the first time or premised on facts outside the record (People v Giles, 24 NY3d 1066, 1068 [2014]). Unlike a direct appeal, a trial court's review of a motion under CPL § 330.30(1) is limited solely to issues of law. CPL § 330.30(1) does not grant a trial court the factual review or interests of justice powers possessed by the Appellate Division (People v Carter, 63 NY2d 530, 536 [1984]). With these principles in mind, the Court turns to the defendant's arguments.
Testimony Regarding the Decedent's Interest in Astronomy
At the time of his arrest, the defendant had come to be known in the local community by the moniker "Jupiter Joe." He hosted public events relating to astronomy and telescopic [*2]viewings. While not yet known in 1999 by the public persona of "Jupiter Joe," the People set forth evidence that in interviews the defendant had stated how he developed his interest in astronomy as a child. He had also expressed his desire to share this passion with children who grew up like him with few opportunities for viewing the stars and planets. Before her disappearance, the decedent had spoken to her childhood friend, Kimberly Ortiz, about becoming the first Latina astronaut from the Bronx. The decedent's diary entries included references to space and planets and Minerliz recorded the names of relevant websites that she and Kimberly found in the library.
The People's case was entirely circumstantial. At the time of the decedent's disappearance the defendant lived in the same apartment building as Minerliz. The defendant acknowledged in a videotaped interrogation that he knew Minerliz, that she and her sister sold things like candy and ornaments to him and other residents, and that he had seen her riding her bike in front of the building. The People argued that the presence of semen found on Minerliz's sweatshirt suggested that the defendant must have had a much closer and more intimate interaction with Minerliz than what he had admitted to. Evidence of Minerliz's interest in astronomy the People argued provided a scenario for how such a close encounter between her and the defendant arose.
The defense countered that this evidence had no relevance since there was nothing to support that the defendant knew of their shared interest. The defendant's post-verdict motion sets forth the same argument. The defense does not dispute that the evidence was appropriately viewed as non-hearsay state of mind evidence.
"In New York, the general rule is that all relevant evidence is admissible unless its admission violates some exclusionary rule" (People v Scarola, 71 NY2d 769, 777 [1988]). "Evidence is relevant if it has any tendency in reason to prove the existence of any material fact, i.e., it makes determination of the action more probable or less probable than it would be without the evidence" (Scarola, 71 NY2d at 777). A trial court may still exercise discretion to exclude evidence where the probative value is outweighed by either prejudice or the risk that it will mislead the jury (id.). Here, the unusual nature of the defendant's and decedent's mutual interest added to its relevance. Admission provided an explanation for how the decedent would have been in a setting where the defendant's semen transferred to her clothing. It was thus relevant under New York State evidentiary law, highly probative, and not misleading to the jurors (id.).
Preclusion of Evidence concerning Raymond Robles
The defense argues that the Court erroneously precluded certain evidence concerning the decedent's stepfather, Raymond Robles. The People's case chronicled the police investigation from the point of Minerliz's disappearance through the defendant's ultimate arrest over 20 years later. The elicited testimony included the police initially identifying Mr. Robles as a potential suspect, his exclusion as a contributor to the DNA on Minerliz's sweatshirt, and the police eliminating him as a suspect.
The Court ruled throughout the trial that questions relating to the police investigation of Raymond Robles and others would be permitted a wide berth (cf. Alvarez v Ercole, 763 F3d 223, 231 [2d Cir 2014] [Cross-examination unreasonably restricted where its purpose "was not to show that an alternate perpetrator had in fact committed the crime, but was pursued to demonstrate that there was an alternate suspect that the police had disregarded in their investigation"]). Separately, the Court distinguished that questions of police witnesses solely designed to draw out an inference of third-party culpability would be subject to the balancing [*3]test required by People v Primo (96 NY2d 351, 356-357 [2001]).
During cross examination of the first Detective assigned to the case, the defense began to intimate Mr. Robles' potential culpability by questioning the adequacy of Mr. Robles's alibi. As the question stemmed from inadmissible hearsay, the Court sustained the People's objection. The defense did not request a hearing under Primo, and the questioning of Detective Ryan continued with fulsome exploration of the police investigation. (Alvarez, 763 F3d at 231).
With the next police witness, Detective Malcolm Reiman, the defense informed the Court that it would argue third-party culpability as to Raymond Robles. The Court proceeded to conduct the balancing test required by the Court of Appeals in Primo. The defense proffered several contentions and proposed lines of questioning in support of arguing third party culpability. These included supposed time lapses in Mr. Robles' alibi, an anonymous tip that Mr. Robles was molesting the decedent, a call from the decedent's home to a life insurance company, and an email that may or may not have been between Mr. Robles and the decedent. All this evidence involved innuendos relating to inadmissible hearsay (see People v Hayes, 17 NY3d 46, 53 [2011] [right to present a defense does is not carte blanche to circumvent the rules of evidence]; People v Cepeda, 208 AD2d 364, 364 [1st Dept 1994], lv denied 85 NY2d 860 [1995] [same]; United States v Almonte, 956 F2d 27, 30 [2d Cir 1992] [same]). For instance, no evidence existed that Mr. Robles himself spoke to an insurance agent or had an insurance policy. The inference that Mr. Robles possibly molested the decedent arose from an anonymous source. The nature of the evidence counseled against admission, since it carried a "strong potential for undue prejudice, delay and confusion" and was "speculative" (People v Powell, 27 NY3d 523, 531 [2016]). The Court ruled that these questions did not meet the threshold for admissibility and presented a substantial risk of "undue prejudice, delay and confusion: (id.). 
Prejudice During Detective Reiman's Testimony
The defense argues that it was prejudiced by testimony of Detective Reiman who, at several points, injected the word "killer". Detective Reiman testified about the significance of semen and DNA evidence in an investigation such as the one that occurred here, since it tends to suggest intimate contact. During an exchange about how the detective trains others to conduct interviews in homicides with DNA evidence, the defense objected twice to testimony by the detective. The Court sustained an objection to the detective's use of the word "killer." The Court also gave a curative instruction reminding the jurors that the detective was speaking in generalities about how he trains detectives and was not suggesting what occurred in this case. The detective himself noted that he had not interrogated the defendant.
The next day, the defense requested a mistrial, arguing that the detective's use of the word "killer" and his characterization of the DNA evidence had usurped the jury's fact-finding and violated the presumption of innocence. The Court noted that while Detective Reiman had used dramatic language, he used it in relation to how he trained detectives and not in reference to the defendant. The Court denied the request for a mistrial but agreed to give another curative instruction. In this instruction, the Court called the jurors' attention to Detective Reiman's use of the word "killer", reminded the jurors that they alone are the finders of fact, and admonished that characterizations should not be accepted as fact.
Jurors are presumed to follow the Court's curative instructions (see People v Davis, 58 NY2d 1102, 1103-04 [1983]; People v Jackson, 52 AD3d 413 [1st Dept 2008], lv denied 11 NY3d 737 [2008]). The Court's instructions were sufficient to alleviate any possible prejudice, and the drastic remedy of a mistrial was unwarranted (see People v Johnson, 67 AD3d 560 [1st [*4]Dept 2009], lv denied Jackson, 52 AD3d at 413; People v Brown, 290 AD2d 251 [1st Dept 2002], lv denied 97 NY2d 751 [2002]). 
Preclusion of Certain Defense Witness Testimony
The defense argues that the Court should not have precluded proposed habit testimony by Denise Matos, the defendant's ex-girlfriend whom he dated prior to the decedent's disappearance, and Roger Colon, who resided at 1540 Pelham Parkway South between 1998 and 1999. The defense proffered that Ms. Matos and Mr. Colon were knowledgeable about the defendant's work schedule and that Ms. Colon could also testify that the defendant did not own a telescope or tell people about his interest in astronomy in 1999. The defense proffered that Ms. Matos would testify that the defendant generally did not get home from work until after 6:00 PM. Ms. Matos had been the defendant's girlfriend and lived with him but had moved out prior to Minerliz's disappearance. Mr. Colon, who had been a neighbor of the defendant, would testify to his recollection that the defendant would leave for work early in the morning and return late in the evening.
To qualify as habit evidence under New York State evidentiary law, the proffered evidence must show "such a repetitive pattern as to be predictive of defendant's conduct," and cannot be based on what the defendant "generally" did (see People v Simmons, 39 AD3d 235, 236 [1st Dept 2007], lv denied 9 NY3d 851 [2007] [court properly precluded testimony that "in the month preceding the robbery, defendant generally came directly home every evening after work and remained there"]; People v Megnath, 164 AD3d 834, 835 [2d Dept 2018], lv denied 32 NY3d 1127 [2018] [court properly precluded testimony that "the defendant generally put out his garbage in front of his home in Brooklyn at 8:30 a.m. as an alibi to the murder, which occurred at about 8:00 a.m. in Queens"]). As stated by the federal court that reviewed Megnath and denied habeas relief, "[New York law] precludes as not probative evidence of repeated behavior that does not rise of the level of a habit" (Megnath v Royce, 2024 WL 7592392, *10 [ED NY 2024]). Neither proposed testimony met the standard necessary to qualify as habit evidence.
As to the testimony by Ms. Matos that the defendant did not possess a telescope or tell anyone that he was interested in astronomy, the parties did not dispute that the defendant had a lifelong interest in astronomy. Ms. Matos had no basis for testifying that the defendant never shared his interest with anyone, including the decedent. As the United States Supreme Court has explained, courts do not offend the right to present a defense by "exclud[ing] evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury" (Holmes v South Carolina, 547 US 319, 320 [2006]). 
Summation Commentary by the People
The defense argues that this Court should not have denied its motion for a mistrial based on certain summation commentary by the People. Denise Matos testified that the defendant did not have a license or drive in 1999. During their cross-examination, the People elicited that the defendant's brother Michael drove and that, at some point, he moved to Co-op City. The body of the decedent was discovered in a dumpster close to Co-op City, approximately two miles from the building where the decedent and defendant both lived.
During summations, the defense commented on the People's questioning of Denise Matos relating to the defendant's brother. In response, the People stated that Michael "owned a car" and "lived in Co-op City." The People agree that the defendant's brother was seventeen in 1999 and that it was not likely he either owned a car or lived near Co-Op City at that time.
The People do not exceed the bounds of permissible summation conduct when their [*5]arguments in summation are a fair response to defense arguments (see e.g. People v Dunlop, 66 AD3d 609 [1st Dept 2009], lv denied 13 NY3d 906 [2009]; People v Crespo, 203 AD2d 182, 182-83 [1st Dept 1994], lv denied 84 NY2d 824 [1994]). Here, the defense argued in summation that the defendant did not drive or have a car to dispose of the decedent's body. During this argument, the defense disputed that the defendant's brother could have assisted him. In summation, the People responded that the defendant's brother did have a car and had lived near Co-Op City. While there was nothing in the record that affirmatively showed the defendant's brother either owned a car or was living in Co-Op City, the jurors were free to, consistent with the Court's instructions, reject the People's argument and rely on their recollection of the trial evidence. As the First Department has noted, a "minor misstatement" by the People during summation does not require a new trial (see People v Torres, 148 AD3d 490, 491 [1st Dept 2017], lv denied 29 NY3d 1087 [2017]; People v Leslie, 232 AD2d 94 [1st Dept 1997], lv denied 91 NY2d 875 [1997]). Further, after denying the mistrial motion, the Court offered a curative instruction, which the defense declined (see People v Panlitz, 203 AD3d 660 [1st Dept 2022], lv denied 38 NY3d 1073 [2022] [counsel's rejection of a curative instruction considered when evaluating court's denial of mistrial motion]; People v Tolbert, 202 AD2d 171, 172 [1st Dept 1994, lv denied 84 NY2d 833 [1994] [same]).
Testimony by OCME Criminalists Cindy Rodriguez and Lisa Palumbo-Desire
In his post-verdict motion, counsel argues that Cindy Rodriguez and Lisa Palumbo-Desire testified falsely. As criminalists for the Office of the Chief Medical Examiner Cindy Rodriguez and Lisa Palumbo-Desire conducted analysis of stain "6A" on the decedent's sweatshirt. Each testified that they considered the stain to be semen. Both Ms. Rodriguez and Ms. Palumbo-Desire were qualified, without objection, as experts in forensic biology. 
The defense has moved for vacatur under CPL § 330.30(1) which precludes the Court from reweighing the evidence or exercising interests of justice powers to reach unpreserved issues (Carter, 63 NY2d at 536). To the extent that the defense asks this Court to reweigh the evidence and compare the testimony of Ms. Rodriguez and Ms. Palumbo-Desire with that of the defense expert, Dr. Noureddine, this Court may not do so. CPL § 330.30(1) provides only for this Court to review issues of law. Thus, the only cognizable argument set forth by the defense is that Ms. Rodriguez and Ms. Palumbo-Desire were incredible as a matter of law. This argument was not made at trial and is unpreserved (Sudol, 89 AD3d at 499-500).
Were the argument preserved, the Court would find it to be without merit. A witness is incredible as a matter of law when that witness gives testimony tainted by "hopeless contradictions" (People v Calabria, 3 NY3d 80, 82 [2004]). Here, Ms. Rodriguez and Ms. Palumbo-Desire expressed their opinions that the stain was semen based on their forensic analyses and their substantial experience and expertise. The defense expert's differing opinion is not a basis for finding these two witnesses incredible as a matter of law. Rather, the conflicting testimony of the defense expert from the People's experts raised an issue of credibility for the factfinder to resolve (People v Jackson, 65 NY2d 265, 272 [1985]).
Limitations on Cross-Examination of Cindy Rodriguez
The defense also argues that this Court erred by not allowing cross-examination of Cindy Rodriguez regarding mitochondrial DNA testing of a pubic hair. The pubic hair was found by the police on the duct tape wrapped around the decedent. Mitochondrial DNA testing excluded the defendant as a contributor. Ms. Rodriguez did not conduct the mitochondrial testing, nor was she deemed an expert in this field. She was qualified to testify as an expert in nuclear DNA [*6]testing for the analysis she conducted on the decedent's sweatshirt. Additionally, she had no factual basis for knowing who the police obtained samples from for testing.
Similarly, the Court properly precluded questioning of the defense expert, Dr. Noureddine, intending to demonstrate that no other suspects were compared to the pubic hair. Dr. Noureddine also had no personal knowledge of the police efforts to investigate and obtain samples that could have been tested. Courts may "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury" (Holmes, 547 US at 320).
The defense separately contends that the Court erred by precluding cross-examination of Ms. Rodriguez regarding a 2024 contamination event in OCME's Department of Forensic Biology. The stains on the decedent's sweatshirt were tested in 1999. Inquiry into the 2024 contamination event was more likely to confuse or mislead the jury than yield probative evidence (Holmes, 547 US at 320). 
Preclusion of Testimony by Dr. Noureddine Concerning Certain Studies
As part of its case, the defense called Dr. Maher Noureddine as an expert in forensic molecular biology, forensic DNA and serology. Before calling Dr. Noureddine, the People moved to preclude evidence suggesting semen could survive high temperatures in a wash and transfer from one article of clothing to another. While evidence was adduced that the decedent was often seen doing laundry, there was no evidence that the defendant and decedent did laundry together, ever shared a washing machine, or mingled clothing. Further, the defense theory had consistently been that the stain on the decedent's sweatshirt was not semen. The proposed evidence related solely to semen not any other bodily fluid.
"As a general rule, the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court" (People v Lee, 96 NY2d 157, 162 [2001]). In exercising this discretion, "the trial court must decide whether, depending on the facts of [the] case, the proffered expert testimony would be helpful in aiding a lay jury reach a verdict" (People v Brown, 97 NY2d 500, 505 [2002]). Here, testimony regarding the proffered studies would have been confusing, distracting, and irrelevant. It aligned with neither the defense theory nor the evidentiary record.
Lastly, the Court notes that in resolving this argument, the Court has not considered the affidavit of Dr. Noureddine offered with the motion to set aside the verdict. As noted, a motion under CPL § 330.30(1) must be based on the record (see Giles, 24 NY3d at 1068). The submission of this new affidavit was improper.
Preclusion of Dr. Santoro
The defense proffered an expert, Dr. Anthony Santoro, to testify that a person who ejaculated on a minor's clothing would be a pedophile who likely committed other indecent acts against children besides the charged conduct. According to Dr. Santoro, the defendant did not fit this profile since he had not committed any other acts against children in the years following the decedent's death and disappearance. The defense's offer of proof rested on a report prepared by Dr. Santoro. The report contained no citation to psychological literature in support of its conclusions, and Dr. Santoro never interviewed the defendant or conducted any psycho-sexual evaluations. Rather, Dr. Santoro relied on information shared by defense counsel and a review of the defendant's social media. In offering Dr. Santoro as an expert witness, the defense relied on an excerpt of a trial transcript in Nassau County where Dr. Santoro had been allowed to offer similar testimony regarding the profile of a pedophile.
As earlier noted, for a court to exercise its discretion to admit expert testimony, that testimony should be a useful aid to the jury (see Brown, 97 NY2d at 505). In addition, expert testimony cannot be speculative, nor may it be premised on something that is not beyond the ken of an ordinary juror (see People v Ignatyev, 147 AD3d 489, 490 [1st Dept 2017], lv denied 29 NY3d 1033 [2017]). Here, the defense provided no scientific basis or foundation for the Court to find the proffered testimony either reliable or relevant. Further, the defendant faced charges solely relating to the decedent. Hypothesizing from unsubstantiated sources that the defendant did not abuse children in the years after the decedent's death would have solely distracted the jury.
Court's Limiting Instruction on Hearsay
In its final instructions, the Court gave the jury a limiting instruction regarding the admission of hearsay concerning the police investigation. The Court explained that while hearsay is normally not admissible, certain statements by law enforcement were allowed because they were offered not for their truth, but to explain certain actions that the police took. The defense argues that the Court committed error by giving this instruction over the defense objection.
Limiting instructions are necessary to ensure that jurors consider the evidence adduced at trial for legally permissible purposes. Therefore, appellate courts have reversed trial courts for failure to give appropriate limiting instructions (see People v Davis, 225 AD3d 62, 79 [1st Dept 2024] [reversal for failure to give limiting instruction to separately consider incidents consolidated for trial]; People v Greene, 306 AD2d 639, 642-43 [3d Dept 2003], lv denied 100 NY2d 594 [2003] [reversal for failure to give limiting instructions for Molineaux evidence]). Omitting the instruction would have allowed the jury to consider such evidence for impermissible purposes. The defense asserts that strategically it preferred to have certain law enforcement testimony considered for its truth. Assenting to this request would have directly obviated the Court's duty to uphold the integrity of the trial and instruct the jury on the law.
For all these reasons, the Court denies the motion to vacate the verdict.
This constitutes the decision and order of the Court.
Dated: March 12, 2026Bronx, New YorkAudrey E. Stone, A.J.S.C.